[Cite as *State v. Maddox*, 2013-Ohio-3140.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 99120

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GREGORY A. MADDOX

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-560734

**BEFORE:** Boyle, P.J., Rocco, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** July 18, 2013

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio   44116

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Marc D. Bullard
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1}   Defendant-appellant, Gregory Maddox, appeals from a judgment sentencing him to 17 years in prison for attempted murder and having a weapon while under a disability.   He raises three assignments of error for our review:

1. The trial court erred when it sentenced Mr. Maddox to maximum, consecutive prison terms.

2. The trial court erred by not calculating and awarding Mr. Maddox jail-time credit in this case.

3. The trial court erred by ordering restitution in violation of the provisions of R.C. 2929.18.

{¶2}   Finding no merit to his appeal, we affirm.

Procedural History and Factual Background

{¶3}   In March 2012, Maddox was charged with five counts: two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2); attempted murder in violation of R.C. 2923.02 and 2903.02(A); and two counts of having a weapon while under a disability in violation of R.C. 2923.23(A)(2) and (3).   The felonious assault and attempted murder charges carried one- and three-year firearm specifications.   He originally pleaded not guilty to all charges.   But he later withdrew his plea of not guilty and pleaded no contest to all five counts and the specifications as indicted.

{¶4}   At the time of his plea, Maddox acknowledged that he was on probation in other cases with the same judge.   The trial court asked Maddox if he realized that his

plea would make him a probation violator who could receive a consecutive period of incarceration. Maddox replied that he understood.

**{¶5}** Prior to sentencing Maddox, the trial court merged the felonious assault counts (Counts 1 and 2) with each other and with the attempted murder count (Count 3), and merged the counts involving having a weapon while under a disability (Counts 4 and 5). The state elected to have Maddox sentenced on Counts 3 and 5.

**{¶6}** At the sentencing hearing, the trial court explained:

> This incident took place on March 8, 2012, at approximately 1500 hours, that would make that 3:00 in the afternoon, at West 38th Street. There was a shooting.
>
> Upon their arrival, officers spoke to the witness, Elijah Blanco, who stated that Robert Holsey — that he and Robert Holsey were walking up to his house when a Ford Taurus pulled up.
>
> He recognizes the driver as Heather Gump. Daniel Moncrease jumped out of the vehicle and began to fight with the victim, Mr. Holsey.
>
> As they, Moncrease and Holsey, were fighting, another unknown male jumped out of the vehicle with a shotgun and shot Robert Holsey in the abdomen. The males jumped back into the vehicle and fled the scene.
>
> Blanco called the police, at that time the police responded, they arrested Heather Gump without incident. They then responded to Moncrease's, where he was arrested and told that his brother, Gregory Maddox, was the person who shot the victim.
>
> The victim was transported to Metro and thank God he survived[.]

**{¶7}** The victim, the victim's mother, the victim's uncle, and the victim's grandmother spoke at the sentencing hearing, all recommending the court give Maddox the maximum sentence.

**{¶8}** The state also recommended that the trial court give Maddox the maximum sentence of 17 years in prison. The state explained that Maddox shot the victim two times at close range, within four feet, with a 12-gauge shotgun. After the incident happened, Maddox "hid in Lorain County trying to avoid capture." Once he was arrested, Maddox told the detective that "he went up to the victim and laid him down with a Mossberg[.]" The state also indicated that Maddox was a "known associate of a gang on the west side known as the Cut Throat Bloods."

**{¶9}** Tyra Byrd, Maddox's fiancee, testified on his behalf. She told the court that Maddox needed substance abuse help, not prison. She also told the court that bipolarism "possibly could run in his family." She stated that Maddox hears voices and uses drugs to get away from those voices. She also said that Maddox "doesn't even remember being there that day."

**{¶10}** Defense counsel explained that even though the court's psychiatric clinic found Maddox to be sane, the record indicated that Maddox "has serious diminished mental capacity." Defense counsel stated, "Judge, this is — the boy ain't right, in simple language. He doesn't have everything up here to reason from point A to point B to point C. He saw his brother being beat up, somebody with his limited capacity does the wrong thing and thinks the wrong thing." Defense counsel further stated, "under our laws, a maximum consecutive sentence is reserved for the most serious offenders, for those who have the mental capacity to appreciate the wrongfulness of their acts, which he does not have." Defense counsel submitted to the court that the sentence that Maddox

should receive "is in the range * * * of eight to twelve years rather than the sentence that the prosecutor has proposed."

**{¶11}** Maddox apologized to the court, the victim, and the victim's family. Maddox explained that he has always heard voices, but never knew there was something wrong with him. Maddox admitted that he has an anger problem. He explained that when he heard that someone wanted to kill his brother, he just wanted to "stop it from happening." Just prior to the shooting, Maddox said that he smoked a cigarette "dipped" in PCP. He told the court that he woke up "a few hours later, a lot of missed calls, I'm not sure what's going on, talking about I killed somebody."

**{¶12}** The presentence investigation report rated Maddox at a high risk to reoffend.

**{¶13}** The court indicated that it reviewed the psychiatric reports and stated, "there is an absence of any indication that he's had serious mental-health issues. He's had no prior psychiatric history at all." The court explained that Maddox had been diagnosed with an anti-social personality disorder, which is "a pretty fancy way of saying that he's got a bad attitude and that he is an angry person and that he has been out of control for years and that the situation was exasperated by his use of street drugs, his use of alcohol until he would black out, his use of PCP." The court read a portion of the report into the record, stating:

> Anti-social personality disorder is characterized by a disregard for and a violation of the basic rights of others. It manifests in adolescents with symptoms of conduct disorder.

Mr. Maddox reported that he was frequently suspended for fighting, throwing chairs at teachers and pushing desks against teachers. He also reported a history of animal cruelty. He said that he killed a dog that bit him, he set a cat on fire.

Cruelty towards animals that are commonly used as household pets is associated with conduct disorder and anti-social personality disorder.

As an adult, he has repeatedly performed acts that constitute grounds for arrest, failed to maintain stable employment, demonstrated irritability, as evidenced by multiple incidents of violence.

The diagnosis of polysubstance dependence is based upon Mr. Maddox's maladaptive pattern of drinking alcohol, using ecstacy, using marijuana, and we also know he was using PCP and claims he used PCP on the day of the offense.

**{¶14}** The court went on to tell Maddox that he had many opportunities to "get [his] act together" due to the same judge sentencing him to community control sanctions in several other cases. The court reviewed Maddox's criminal history, all before the same judge. In 2009, the same judge sentenced him to probation for drug possession. The court told Maddox that it placed him on probation where he was supervised by "the intensive special probation unit," where he had many opportunities to obtain any kind of services he wanted. The court further stated that while on that probation, Maddox violated the terms and conditions of his probation by using drugs and alcohol. While still on probation, Maddox was arrested in two more cases, one was for drug possession on December 23, 2009, and one was for receiving stolen property on January 12, 2010. While those cases were pending, on April 29, 2010, Maddox was also charged with burglary, theft, and receiving stolen property. The same judge sentenced him on all three cases on the same day to "intensive special probation." While on that probation,

Maddox was arrested two months later for receiving stolen property, failure to comply, and obstructing official business for fleeing from police in a vehicle and then on foot. The same judge sentenced him to five years of probation and read him "the riot act," warning him that if he stepped out of line one time, he would get "hammered." The court stated, "I could add all the probation time up and put you away for not just 17 but I could put [you] away for maybe 30[.]"

{¶15} The trial court then stated:

> His behavior is absolutely the worst form of the offense. He is one of the most dangerous offenders I have ever presided over. He was on probation at the time of the offense, he's repeatedly violated the terms and conditions of probation, he wants to tell us now he's been, you know, seriously mentally ill but there's no real basis for that, he's never been treated psychiatrically, he is a person who has anger, you know, anti-social personality disorder and he is uber violent.

{¶16} The court said, "As a courtesy to your attorney and you as a result of the guilty plea, I will not probation violate you, but you're going to do 17 years from today. All the jail-time credit counts towards the probation violation."

{¶17} The court stated:

> And parenthetically what I should say to the community and to the victim and to anybody that may be listening, you know, in the last five weeks I've presided over four shooting cases and it seems that the level of gun violence — senseless gun violence is getting more pronounced every year.
>
> This is sort of a high point when you go and you shoot someone and then make them lay on the ground and you shoot them again with a shotgun and you can't tell why, doesn't want to remember it.
>
> So the court is sending a message to anyone who thinks this is cool or anyone who might be a member of a gang, like you reputedly were, that

this kind of conduct, if it occurs, will be treated in the harshest possible fashion.

**{¶18}** The court placed on the record the fact that Maddox was on probation in four cases, Cuyahoga C.P. Nos. CR-532919, CR-533152, CR-537064, and CR-541895. The court again asked if Maddox was stipulating to being a probation violator. He indicated that he was. The court stated, "I'll terminate probation without imposition of the original sentence," but "the jail-time credit is credited to those cases only. You're doing 17 years from today. That's the message we can send to all the people in the community who want to engage in senseless gun violence."

**{¶19}** The court said that it was imposing consecutive sentences to "punish the offender and protect the public from future crimes by this offender and others." It further stated:

> and obviously he was on probation when this occurred, he used deadly force, shot the victim twice, he has a history of cruelty, he has not responded favorably to counseling in school or to any assistance by the probation department, and I think to release him any sooner would be a great harm to the community.

**{¶20}** The trial court sentenced Maddox to 17 years in prison — 11 years on attempted murder, a felony of the first degree, and 36 months on having a weapon while under a disability, a felony of the third degree, to be served consecutive to each other. The trial court further sentenced Maddox to three years in prison for the firearm specifications, to be served consecutive to and prior to the prison term on the base count of attempted murder. The trial court also advised Maddox that he would be subject to a mandatory five years of postrelease control upon his release from prison.

**{¶21}** Later, defense counsel placed sentencing objections on the record, including his objections to consecutive, maximum sentences and the lack of jail-time credit. The trial court responded, "wait a minute, I gave him the jail-time credit. Would you like me to make — [.]" Defense counsel interrupted, stating, "No, no, no, no, no." The trial court replied, "You can't have it both ways." Defense counsel indicated that he understood.

**{¶22}** It is from his sentencing judgment that Maddox appeals.

Standard of Review

**{¶23}** An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Johnson*, 8th Dist. No. 97579, 2012-Ohio-2508, ¶ 6, citing *State v. Hites*, 3d Dist. No. 6-11-07, 2012-Ohio-1892, ¶ 7. Specifically, R.C. 2953.08(G)(2) provides that our review of a defendant's sentence is not an abuse of discretion. An appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." *Id.* If an appellate court clearly and convincingly finds either that (a) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant"; or (b) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id*.

Consecutive Sentence

**{¶24}** In his first assignment of error, Maddox contends that the trial court erred when it sentenced him to consecutive sentences because it failed to find "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

**{¶25}** R.C. 2929.14(C)(4) provides that a court may issue consecutive prison terms if the court finds (1) "the consecutive service is necessary to protect the public from future crime or to punish the offender," (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and (3) one of three enumerated factors applies to the offender. R.C. 2929.14(C)(4)(a)-(c).

**{¶26}** In each step of this analysis, the statutory language directs that the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). In making these findings, a trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455, *10 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute. *See State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999).

**{¶27}** Maddox maintains that the trial court erred in sentencing him to maximum, consecutive sentences because the trial court failed to consider his mental issues and substance abuse problems. We disagree. In his sanity evaluation, a psychiatrist noted that "[a]lthough Mr. Maddox told me that he has heard 'voices' since childhood[,] I did not find sufficient evidence to indicate that he suffered from a psychotic illness." The psychiatrist found that the "voices" that Maddox heard "were in fact his own thoughts," not "genuine hallucinations" that are a result of a psychotic illness. And although the psychiatrist found no evidence of a current "psychotic disorder," she stated that Maddox's family history placed him at a greater risk of developing it in the future. Thus, she concluded that Maddox's symptoms "could represent a prodromal (period before illness) phase of symptoms."

**{¶28}** Nonetheless, the psychiatrist still found that Maddox was sane at the time of the act and competent to stand trial. The psychiatrist found that even though Maddox stated that he did not recall committing the offenses, "based upon collateral accounts of his conduct and based upon his own account of his thoughts and motivations prior to the alleged offenses, it is my opinion, with reasonable medical certainty, that whether or not Mr. Maddox now remembers his behavior, he knew the wrongfulness of his conduct on March 8, 2012." Thus, we find that there is no evidence that the trial court failed to consider the results of his psychiatric evaluations.

**{¶29}** Further, the trial court read portions of Maddox's psychiatric evaluation into the record, including the fact that Maddox had no history of psychotic illness and that he

had been diagnosed with an anti-social personality disorder, stating that Maddox was "an angry person" who "has been out of control for years." The court noted that his disorder had been exasperated by his substance abuse issues. But the court explained that Maddox had many opportunities to address his mental health and substance abuse issues while on community control in past cases, but he failed to do so. The court also explained the senseless violence of Maddox's actions — shooting a person at close range with a shotgun, causing them to fall to the ground, and shooting them for a second time while they were on the ground. Thus, the record shows that the trial court considered Maddox's mental health and substance abuse history.

{¶30} In summary, we conclude that the trial court held a lengthy hearing, after which it made thoughtful and extensive findings before imposing maximum, consecutive sentences. It discussed the seriousness of Maddox's crimes and the need to protect the public and punish Maddox. The trial court further considered the emotional and physical harm to the victim and the victim's family. The trial court also found that Maddox was on probation in several other cases at the time he committed the offenses. The trial court further found that Maddox's actions were the worst form of the offense, noting that Maddox shot the victim once, made him lie on the ground, and shot him again. Finally, the trial court noted that Maddox was "uber violent." Thus, we find that the trial court fully met the statutory requirements of R.C. 2929.14(C)(4) to impose consecutive sentences.

**{¶31}** Maddox further argues that his sentence was not consistent and proportionate to similarly situated offenders.

**{¶32}** Courts have repeatedly held that to preserve a disproportionality argument for appeal, "'the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis[.]'" *State v. McClendon*, 7th Dist. No. 11 MA 15, 2012-Ohio-1410, ¶ 15, quoting *State v. Miller*, 2d Dist. No. 09-CA-28, 2010-Ohio-2138, ¶ 51. Maddox failed to raise this issue in the trial court.

**{¶33}** Nonetheless, we will briefly address this issue. Maddox only cites to one case where he claims the defendant was similarly situated, his codefendant's case. Specifically, he claims that his codefendant, Heather Gump, only received a 4-year prison sentence.

**{¶34}** R.C. 2929.11(B) states in relevant part that "[a] sentence imposed for a felony shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶35}** We find no error on the part of the trial court. There is no requirement that codefendants receive equal sentences. *See State v. Nelson,* 11th Dist. No. 2008-L-072, 2008-Ohio-5535. But also, we find that Maddox was not similarly situated to Gump. Gump was the driver of the vehicle. She drove Maddox and his brother to the scene of the crime. Maddox, on the other hand, was the principal offender, shooting the victim twice with a shotgun at close range.

**{¶36}** Accordingly, Maddox's first assignment of error is overruled.

Jail-Time Credit

**{¶37}** In his second assignment of error, Maddox maintains that the trial court violated his equal protection rights by not crediting him for the time that he spent in jail awaiting disposition of the charges in the present case. At the outset, we note that Maddox waived this issue by withdrawing his objection to the trial court ordering that all of the jail-time credit go toward the probation violations. Nonetheless, in reviewing the record, we find no error on the part of the trial court.

**{¶38}** The practice of awarding jail-time credit, although now covered by state statute, has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions. *State v. Fugate*, 117 Ohio St.3d 261, 2009-Ohio-856, 883 N.E.2d 440, ¶ 7. The rationale for giving jail-time credit "is quite simple[;] [a] person with money will make bail while a person without money will not." *Id.* at ¶ 25 (Stratton, J., concurring). That means for "two equally culpable codefendants who are found guilty of multiple offenses and receive identical concurrent sentences," the poorer codefendant will serve more time in jail than the wealthier one who was able to post bail. *Id.* at ¶ 25-26. "[T]he Equal Protection Clause does not tolerate disparate treatment of defendants based solely on their economic status." *Id.* at ¶ 7.

**{¶39}** In Ohio, this principle is codified in R.C. 2967.191, which provides in relevant part:

> The department of rehabilitation and correction shall reduce the stated prison term of a prisoner * * * by the total number of days that the

prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial * * * as determined by the sentencing court under division (B)(2)(g)(i) of section 2929.19 of the Revised Code[.]

**{¶40}** R.C. 2929.19(B)(2)(g)(i) states that

[I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall * * * [d]etermine, notify the offender of, and include in the sentencing entry the number of days that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the stated prison term under section 2967.191 of the Revised Code. * * *

**{¶41}** "Although the principle of crediting time served seems fairly simple on its face, in practice, it can be complicated when, inter alia, the defendant is charged with multiple crimes committed at different times, or when the defendant is incarcerated due to a probation violation." *State v. Chafin*, 10th Dist. No. 06AP-1108, 2007-Ohio-1840, ¶ 9. According to R.C. 2967.191, an offender is not entitled to jail-time credit for any period of incarceration that arose from facts which are separate and apart from those on which his current sentence is based. *State v. DeMarco*, 8th Dist. No. 96605, 2011-Ohio-5187, ¶ 10. Thus, R.C. 2967.191 is inapplicable when the offender is imprisoned as a result of another unrelated offense. *State v. Williams*, 126 Ohio App.3d 398, 399, 710 N.E.2d 729 (2d Dist.1998). This means that there is no jail-time credit for time served on unrelated offenses, even if that time served runs concurrently during the pre-detention phase of another matter. *See State v. Cook*, 7th Dist. No. 00 CA 184, 2002-Ohio-7170, ¶ 17.

**{¶42}** In *DeMarco*, the defendant argued that the trial court erred by not awarding him jail-time credit. This court, however, affirmed the trial court's judgment sentencing the defendant for domestic violence without jail-time credit because he had been incarcerated simultaneously for violating the terms of his community control from an unrelated case and for the new charge of domestic violence. *Id.* at ¶ 11.

**{¶43}** Maddox cites to *Fugate*, 117 Ohio St.3d 261, 2009-Ohio-856, 883 N.E.2d 440, claiming that it supports his claim that the trial court erred by not calculating his jail-time credit. In *Fugate*, the Ohio Supreme Court held that "[w]hen a defendant is sentenced to concurrent prison terms for multiple charges, jail-time credit pursuant to R.C. 2967.191 must be applied toward each concurrent prison term." Maddox maintains that "although [he] is not serving any time for the probation cases, it is analogous to a scenario where he would be serving concurrent time for multiple offenses." We disagree.

**{¶44}** In *Fugate*, the defendant was charged with burglary and theft while he was on community control from a previous conviction for receiving stolen property. The defendant served time in jail simultaneously on the new charges and the probation violation. At a revocation hearing held immediately before the sentencing hearing, the trial court imposed a sentence of 12 months for the probation violation and credited the defendant 213 days for the time he spent in jail on the probation violation. The trial court then sentenced the defendant to two years for burglary and six months for theft and

ordered that they be served concurrently to each other and to the 12-month sentence that the defendant received for the probation violation.

{¶45} The Supreme Court analyzed two Ohio Administrative Code provisions that give trial court's direction on how to calculate jail-time credit; Ohio Adm.Code 5120-2-04(G) and (F). The Supreme Court noted that the most relevant rule was set forth in Ohio Adm.Code 5120-2-04(F), which states that

> [i]f an offender is serving two or more sentences, stated prison terms or combination thereof concurrently, the adult parole authority shall *independently* reduce *each sentence or stated* prison term for the number of days confined for that offense. Release of the offender shall be based upon the longest definite, minimum and/or maximum sentence or stated prison term after reduction for jail time credit.

(Emphasis sic.)

{¶46} The Administrative Code provides a different rule, however, for calculating jail-time credit for offenders serving consecutive terms. "In such cases, the code instructs that jail-time credit be applied only once, to the total term." *Fugate*, 177 Ohio St.3d 261, 2009-Ohio-856, 883 N.E.2d 440, at ¶ 10, citing Ohio Adm.Code 5120-2-04(G).

{¶47} The high court reasoned that "[t]hese two directives make clear" that the overall objective is "to comply with the requirements of equal protection by reducing the total time that offenders spend in prison after sentencing by an amount equal to the time that they were previously held." *Id.* at ¶ 11.

{¶48} The Supreme Court held that the trial court erred when it did not award jail-time credit to each of the defendant's concurrent prison terms. It concluded:

When a defendant is sentenced to consecutive terms, the terms of imprisonment are served one after another. Jail-time credit applied to one prison term gives full credit that is due, because the credit reduces the entire length of the prison sentence. However, when a defendant is sentenced to concurrent terms, credit must be applied against all terms, because the sentences are served simultaneously. If an offender is sentenced to concurrent terms, applying credit to one term only would, in effect, negate the credit for time that the offender has been held. To deny such credit would constitute a violation of the Equal Protection Clause. Therefore we hold that when a defendant is sentenced to concurrent prison terms for multiple charges, jail-time credit pursuant to R.C. 2967.191 must be applied toward each concurrent prison term.

*Fugate* at ¶ 22.

**{¶49}** The facts of this case are distinguishable from those in *Fugate*. The trial court did not sentence Maddox to concurrent prison terms for the probation violations and the new charges. Here, Maddox stipulated to probation violations in several cases. In exchange for Maddox's stipulation, the trial court terminated Maddox's probation and stated that all jail-time credit would be applied to the probation violations. So rather than sentence Maddox to additional time for his probation violations, the trial court essentially sentenced Maddox to time served for those violations (i.e., the amount of time he spent in jail once he was arrested on the new charges, simultaneously violating his probation in several cases). Thus, the cases involving Maddox's probation violations were terminated before Maddox was sentenced on the new charges.

**{¶50}** Accordingly, we conclude that Maddox was not entitled to jail-time credit for his sentence on attempted murder and having a weapon while under a disability.

**{¶51}** Maddox's second assignment of error is overruled.

<u>Restitution</u>

{¶52} In his third assignment of error, Maddox argues that the trial court erred by ordering $600 in restitution to the victim by simply relying on statements made by the prosecutor.

{¶53} This court normally reviews an order of restitution for an abuse of the trial court's discretion. *State v. Pollard*, 8th Dist. No. 97166, 2012-Ohio- 1196, ¶ 7, citing *State v. Marbury*, 104 Ohio App.3d 179, 661 N.E.2d 271 (8th Dist.1995). Here, however, Maddox failed to object or contest the amount of restitution ordered at sentencing. He has therefore waived all but plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. *See State v. Tichon*, 102 Ohio App.3d 758, 767, 658 N.E.2d 16 (9th Dist.1995). Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶54} R.C. 2929.18(A)(1) provides that courts may impose financial sanctions, including:

> Restitution by the offender to the victim of the offender's crime amount based on the victim's economic loss. * * * If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to

impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. * * *

**{¶55}** At the sentencing hearing, after talking with the victim, the state indicated that the victim's economic loss amounted to $600; $200 for clothing and only $400 for the hospital stay because he was insured. Maddox did not object or otherwise dispute this evidence. The undisputed amount of the victim's economic loss was imposed. Therefore, the trial court did not commit plain error in its restitution order.

**{¶56}** Maddox's third assignment of error is overruled.

**{¶57}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
PATRICIA ANN BLACKMON, J., CONCUR