[Cite as *State v. Beckwith*, 2022-Ohio-2362.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111024 |
| v. | : | |
| GREGORY BECKWITH, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART
**RELEASED AND JOURNALIZED:** July 7, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-18-632469-A and CR-18-632789-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristen Hatcher, Assistant Prosecuting Attorney, *for appellee.*

Buckeye Law Office and P. Andrew Baker, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Gregory Beckwith ("Beckwith"), appeals an order of restitution imposed as part of his sentence. For the following reasons, we vacate the order of restitution in the amounts of $725 and $1,890 but otherwise affirm the conviction and remaining portions of Beckwith's sentence.

{¶ 2} In September 2018, Beckwith was charged in two cases, Cuyahoga C.P. No. CR-18-632469-A and Cuyahoga C.P. No. CR-18-632789-A, involving two separate victims. Each case charged him with two counts of menacing by stalking in violation of R.C. 2903.211(A)(1), a fourth-degree felony. The charges included furthermore clauses stating that while committing the offense, Beckwith had trespassed on property where the victims were employed and had also been convicted of or pled guilty to this offense in the past. Beckwith did not appear at his October 2018 arraignment, and the trial court issued a capias warrant.

{¶ 3} In February 2019, Beckwith pled not guilty to the indictments and was released on bond with court-supervised release, ordered to have no contact with the victims, and required to wear an inclusion-exclusion GPS ankle monitor. In March 2019, the state filed a motion to revoke Beckwith's bond due to his extensive criminal record, former convictions for attempted failure to provide notice of change of address and attempted escape, and a history of failing to appear and comply with the conditions of his release.

{¶ 4} In May 2019, following a plea agreement with the state, Beckwith withdrew his not guilty plea and entered a guilty plea to one count of menacing by stalking in each case in exchange for the state's amending the indictments to dismiss the remaining count in each case. The trial court ordered a presentence-investigation report and, at Beckwith's request, a mental-health evaluation and mitigation-in-penalty report. The trial court continued the conditions of Beckwith's supervised release. In June 2019, Beckwith failed to undergo the mental-health

evaluation and failed to appear at sentencing, after which the trial court issued another capias warrant and granted the state's March 2019 motion to revoke Beckwith's bond. Beckwith was subsequently arrested on the capias and extradited from Georgia.

{¶ 5} The matter proceeded to a sentencing hearing on October 20, 2021. At the sentencing hearing, Beckwith admitted that during the pendency of these proceedings, he moved to Georgia and began working two jobs. The trial court sentenced Beckwith to two consecutive 18-month terms, one for each count, for a total prison term of 36 months and had the following exchange with the state:

> Court: [D]id you happen to get a figure for the extradition fees?
>
> State: No, your Honor. I'm still waiting. I did hear back saying that they are trying to collect them together.
>
> Court: Well, realistically you probably won't be getting any money anyways, but I will order [Beckwith] to pay $725 to the probation department. That's in — for court costs, but it's for the restitution and for the ankle monitor that you decided to alleviate yourself from. So I won't impose any other fines or court costs.
>
> Anything else [from the state]?
>
> State: Would we be able to make — or are the fees part of the journal entry and once we get that figure, present that documentation to this Court?
>
> Court: Sure. I can order it. Like I said, in reality you're not going to get any money, but I'll order restitution or extradition fees to be paid as well.

(Tr. 37, Oct. 20, 2021.)

{¶ 6} In its October 25, 2021 sentencing entry, the trial court ordered Beckwith

to repay [the] cost of [the] damaged GPS monitoring device, payable to the Cuyahoga County Sheriff's Department in the amount of [$]725. Costs waived. Fines waived. Restitution ordered in the amount of $1,890.00 to the to the Cuyahoga County Prosecutor's Office, payable through the probation department.

{¶ 7} Beckwith now appeals this judgment, raising the following two assignments of error for review:

Assignment of Error I: The trial court erred in imposing restitution in [this] case.

Assignment of Error II: The restitution errors must be reversed because of ineffective assistance of counsel.

{¶ 8} In his first assignment of error, Beckwith argues that the trial court committed plain error when it ordered him to pay $725 to the sheriff's office, which Beckwith contends is an implied order of restitution, and $1,890 to the prosecutor's office, which Beckwith contends is an express order of restitution. Beckwith maintains that R.C. 2929.18 limits the financial sanction of restitution to victims of crimes, the state cannot recover these costs "under any other provision" of the Revised Code, and therefore the restitution orders should be vacated. The state agrees that the trial court erred when it referred to these costs as "restitution" but argues that the error was merely nominal. The state contends that R.C. 2949.14 permits recovery of the extradition costs and R.C. 2929.18(A)(5)(a) permits recovery of the costs associated with the damaged ankle monitor. The state maintains that the restitution orders should be vacated and the matter remanded for proper imposition of costs.

{¶ 9} This court typically reviews an order of restitution for an abuse of the trial court's discretion. *State v. Milenius*, 8th Dist. Cuyahoga No. 100407, 2014-Ohio-3585, ¶ 10, citing *State v. Marbury*, 104 Ohio App.3d 179, 661 N.E.2d 271 (8th Dist.1995).[1] The state's argument that the trial court's restitution orders constitute only nominal error suggests that we should review the orders as harmless error. Harmless error applies when a party objects to the error in the trial court. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. Under harmless error, the state bears the burden of showing that the error did not affect the defendant's substantial rights. *Id.*

{¶ 10} Here, however, neither party objected to or otherwise contested the amount of restitution ordered at sentencing and therefore waived all but plain error on appeal. *State v. Posa*, 8th Dist. Cuyahoga No. 94255, 2010-Ohio-5355, ¶ 6. To qualify as plain error, the error must be so obvious and fundamental that it should have appeared to the trial court without objection, and the appellant must demonstrate that but for the error, the outcome of the proceedings would have been

---

[1] This court has not followed other appellate districts in reviewing restitution orders using the more deferential clearly and convincingly contrary to law standard pursuant to R.C. 2953.08(G)(2), as set forth in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. *See State v. Presutto-Saghafi*, 9th Dist. Lorain Nos. 18CA011411 and 18CA011412, 2019-Ohio-5373, ¶ 9 (citing cases). "Prior to *Marcum*, this court applied R.C. 2953.08(G)(2) in reviewing sentencing-term challenges and applied an abuse of discretion standard in reviewing challenges to restitution orders." *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 73, fn. 4 (8th Dist.), citing *State v. Maddox*, 8th Dist. Cuyahoga No. 99120, 2013-Ohio-3140, ¶ 23, 53. "Since *Marcum* was decided, this court has continued to apply an abuse of discretion standard in reviewing restitution orders." *Id.*, citing *State v. Maurer*, 2016-Ohio-1380, 63 N.E.3d 534, ¶ 12 (8th Dist.). Accordingly, we review Beckwith's challenge to the restitution orders in this case for an abuse of discretion.

different.  *Maddox* at ¶ 53.  The question then before us is whether the trial court was authorized to impose the costs as restitution pursuant to R.C. 2929.18 or some other section of the Revised Code as part of Beckwith's sentence.

{¶ 11} A "sentence" is defined as "the sanction or combination of sanctions imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense." R.C. 2929.01(EE).  A "sanction" is defined as "any penalty imposed upon an offender who is convicted of or pleads guilty to an offense, as punishment for the offense[,] [and] includes any sanction imposed pursuant to any provision of sections 2929.14 to 2929.18 * * * of the Revised Code." R.C. 2929.01(DD). R.C. 2929.18(A)(1) provides for "[r]estitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss * * * [and] shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."  "Economic loss" is defined as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense[.]" R.C. 2929.01(L).

{¶ 12} An order of restitution must be the direct and proximate result of the defendant's offense. *State v. Maddox*, 8th Dist. Cuyahoga No. 102133, 2015-Ohio-2859, ¶ 14, citing *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, ¶ 24.  Otherwise stated, an order of restitution is improper when the defendant was neither charged with nor convicted of any crime related to the alleged economic loss.  *Id.* at ¶ 15, 18.

{¶ 13} Beckwith first argues that the trial court erred by ordering him to pay $725 in restitution for the damaged ankle monitor. Beckwith was charged with and convicted of two counts of menacing by stalking. The economic loss asserted by the state resulted from Beckwith's allegedly removing and damaging the ankle monitor that the trial court ordered him to wear as a condition of his bond. Damage to the ankle monitor was not the direct and proximate result of Beckwith's offenses of menacing by stalking. No economic losses were asserted by the victims of these offenses; nor was the sheriff's office a victim of these offenses. Therefore, to the extent that the trial court's order that Beckwith pay $725 to sheriff's department for the damaged ankle monitor constitutes an implied ordered of restitution, the trial court erred in ordering this payment as restitution.

{¶ 14} The state argues that even if it cannot recover the cost of the damaged ankle monitor as restitution under R.C. 2929.18(A)(1), it can recover that cost as reimbursement under R.C. 2929.18(A)(5)(a). R.C. 2929.18(A)(5)(a) provides for "[r]eimbursement by the offender of any or all of the costs of sanctions incurred by the government," including (i) the "costs of implementing any community control sanction," (ii) the "costs of confinement," or (iii) the "the cost of purchasing and using an immobilizing or disabling device, including a certified ignition interlock device or a remote alcohol monitoring device that a court orders an offender to use under section 4510.13 of the Revised Code."

{¶ 15} The state's reliance on R.C. 2929.18(A)(5)(a) is misplaced. First, damage to the ankle monitor constitutes a separate offense of vandalism under

R.C. 2929.05(B) or criminal damaging under R.C. 2909.06(A), for which restitution may be ordered. *See State v. Shepherd*, 3d Dist. Hardin Nos. 6-19-02 and 6-19-03, 2020-Ohio-3915, ¶ 71 (Willamowski, J., dissenting) ("the act of cutting off the ankle monitor turned this device into evidence of the offense of criminal damaging"); *State v. Ogle*, 4th Dist. Hocking Nos. 11CA29, 11CA32, 12CA2, 12CA11, 12CA12, and 12CA19, 2013-Ohio-3420, ¶ 76-77 (defendant was charged with vandalism for damaging her ankle monitor, pled guilty to the lesser offense of criminal damaging, and was ordered to pay restitution); *see also Maurer*, 2016-Ohio-1380, 63 N.E.3d 534, at ¶ 29 (recognizing that vandalism or destruction of government property is an exception to the general rule that government agencies are not victims entitled to restitution when using public funds to enforce the law); *Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, ¶ 20 (citing cases).

{¶ 16} Here, the state did not separately charge Beckwith with vandalism or criminal damaging for damaging his GPS ankle monitor, and the state cannot circumvent the general rule that government agencies are not victims entitled to restitution by labeling the costs of the damaged ankle monitor as "reimbursement" rather than as "restitution." *See State v. Sierra*, 3d Dist. Hancock Nos. 5-14-15, 5-14-19, 5-14-20, 5-14-21, and 5-14-22, 2015-Ohio-1692, ¶ 11 (the government cannot recover money it spent on drug buys by labeling these costs reimbursement to avoid labeling them as restitution).

{¶ 17} Second, electronic monitoring that is imposed as a condition of pretrial release does not constitute a "sanction" for which the government may be

reimbursed under R.C. 2929.18(A)(5)(a). When a statute's meaning is unambiguous and definite, the statute must be applied as written, consistent with the plain meaning of the statutory language. *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 20. R.C. 2929.18(A)(5)(a) permits "[r]eimbursement by the offender of any or all of the costs of *sanctions* incurred by the government." (Emphasis added.) A "sanction," as noted above, is "any penalty imposed upon an offender who is convicted of or pleads guilty to an offense, as punishment for the offense." R.C. 2929.01(DD).

{¶ 18} By definition, sanctions are imposed upon the offender at sentencing for the crime or crimes of which the offender was convicted. Beckwith was convicted of menacing by stalking. The trial court imposed a 36-month prison term, not electronic monitoring, as a sanction for Beckwith's offense. Because electronic monitoring was not imposed as a sanction, R.C. 2929.18(A)(5)(a), permitting the government to recover the cost of sanctions, does not apply. *State v. Jones*, 7th Dist. Jefferson Nos. 08 JE 20 and 08 JE 29, 2010-Ohio-2704, ¶ 48 ("R.C. 2929.18(A)(5) provides for *reimbursement* to the government for the costs of *sanctions*"). (Emphasis sic.)

{¶ 19} Stated differently, Beckwith's GPS monitor was imposed not as a penalty for his offense, but rather as a condition of his pretrial release. *See State v. Jeko*, 6th Dist. Lucas No. L-18-1093, 2019-Ohio-2044, ¶ 10. Under Crim.R. 46, a defendant may be either detained or released pending trial. If the court orders pretrial release, the defendant must be released on "the least restrictive conditions

that, in the discretion of the court, will reasonably assure the defendant's appearance in court, the protection or safety of any person or the community, and that the defendant will not obstruct the criminal justice process." Crim.R. 46(B). Electronic monitoring and prohibiting contact with victims are among the non-financial conditions of release enumerated under the rule. Crim.R. 46(B)(2)(d) and (e). Any defendant who breaches these conditions or otherwise fails to appear may have his bond revoked. Crim.R. 46(I).

{¶ 20} Here, after issuing a capias for Beckwith's failure to appear at his arraignment, the trial court ordered Beckwith to be released on bond subject to inclusion-exclusion GPS monitoring and to have no contact with the victims. Pursuant to Crim.R. 46(A), the state filed a motion to revoke Beckwith's bond based in part on Beckwith's history of failing to appear and comply with conditions of his release. When Beckwith did not appear at sentencing, the trial court granted the motion and issued a second capias. Sometime between the state's motion and Beckwith's failure to appear at sentencing, Beckwith violated the conditions of his release by removing his GPS monitor and fleeing to Georgia. As a consequence, Beckwith's bond was revoked, and he was subsequently detained to guarantee his appearance at sentencing.

{¶ 21} Because the trial court imposed the GPS ankle monitor as a condition of Beckwith's pretrial release, it cannot properly be considered a sanction as that term is defined in R.C. 2929.01(DD) and used in R.C. 2929.18(A)(5)(a). *See State v. Shepherd*, 3d Dist. Wyandot No. 16-05-02, 2005-Ohio-4754 (R.C. 2929.18(A)(5)(a)

did not give the trial court authority to order reimbursement of the costs of pretrial confinement following the defendant's bond revocation because the defendant's incarceration was not properly considered a "sanction" under the statute).

{¶ 22} A review of the statute's subsections also reveals that Beckwith's pretrial electronic monitoring does not constitute a "sanction" under R.C. 2929.18(A)(5)(a). First, Beckwith's GPS monitoring cannot be considered a "community-control sanction" under R.C. 2929.18(A)(5)(a)(i) because pretrial electronic monitoring imposed as a bond condition differs from electronic monitoring imposed as a sentence or community control sanction. *Jeko*, 6th Dist. Lucas No. L-18-1093, 2019-Ohio-2044, at ¶ 10.

{¶ 23} Nor can Beckwith's GPS monitoring be considered "confinement" under R.C. 2929.18(A)(5)(a)(ii). While "confinement" is not defined within the criminal code, other appellate districts have deemed it "'synonymous with the term 'detention' as defined in R.C. 2921.01(E).'" *Jeko* at ¶ 8, quoting *State v. Sutton*, 6th Dist. Lucas No. L-03-1104, 2004-Ohio-2679, ¶ 13. R.C. 2921.01 defines "detention" in relevant part as "confinement in any public or private facility for custody of persons charged with or convicted of crime in this state[.]" "'Pretrial electronic monitoring at home is different from house arrest or electronic monitoring after conviction.'" *Id.* at ¶ 10, quoting *Sutton* at ¶ 12. Pretrial electronic monitoring is not properly considered "detention" or "confinement." *Id.*, citing *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 72. A defendant receives no jailtime credit for pretrial electronic monitoring at home. *Id.* Also, a defendant may

be prosecuted for escape from electronic monitoring imposed as a criminal sentence or community control sanction but "cannot be prosecuted for escape for violating an electronic monitoring condition of pretrial bond — although, of course, the trial court could revoke bond for any such violation" pursuant to Crim.R. 46(I). *Id.*

{¶ 24} Nor, finally, does the state support its contention that a GPS ankle monitor qualifies as an "immobilizing or disabling device" under R.C. 2929.18(A)(5)(a)(iii), which offers as examples "a certified ignition interlock device" and "a remote alcohol monitoring device," both of which are intended to immobilize or monitor a person following an OVI conviction. The only other reference to "electronic monitoring" associated with reimbursement under R.C. 2929.18(A)(5)(a) is included in R.C. 2949.111, which defines "reimbursement" in part as "any fee for the costs of house arrest with electronic monitoring that the offender agrees to pay." *State v. Taylor*, 163 Ohio St.3d 508, 2020-Ohio-6786, 171 N.E.3d 290, ¶ 38. Here, the trial court did not impose house arrest with electronic monitoring as a sanction against Beckwith, and even if Beckwith's pretrial GPS monitoring could be construed as house arrest, nothing in the record shows that Beckwith agreed to pay the costs of such monitoring as provided by R.C. 2949.111.

{¶ 25} Based on the record before us, the state has not shown that it is entitled to reimbursement for the cost of the damaged ankle monitor pursuant to R.C. 2929.18(A)(5)(a), and the state offers no other section of the Revised Code that would permit it to recover these costs as a financial sanction imposed on Beckwith by the trial court.

{¶ 26} Beckwith next argues that the trial court erred by ordering him to pay $1,890 in restitution for the costs of his extradition from Georgia to Ohio. The state concedes that the trial court erred when it imposed the extradition costs as "restitution" but argues that trial courts routinely order defendants to pay extradition costs as part of felony sentencing pursuant to R.C. 2947.23(A)(1) and 2949.14.

{¶ 27} The state relies on our holding in *Maurer*, 2016-Ohio-1380, 63 N.E.3d 534. In *Maurer*, the trial court ordered payment of extradition costs in addition to restitution at sentencing but referred to the extradition costs as restitution in its sentencing entry. On appeal, this court affirmed the trial court's imposition of extradition costs but remanded for correction of the journal entry nunc pro tunc to reflect the sentence announced at the sentencing hearing. Significantly, *Maurer* recognized that R.C. 2949.14 provides a procedure for collection of extradition costs from felony offenders:

> Upon conviction of a *nonindigent* person for a felony, the clerk of the court of common pleas shall make and certify under the clerk's hand and seal of the court, a complete itemized bill of the costs made in such prosecution, including the sum paid by the board of county commissioners, certified by the county auditor, for the arrest and return of the person on the requisition of the governor, or on the request of the governor to the president of the United States, or on the return of the fugitive by a designated agent pursuant to a waiver of extradition except in cases of parole violation. The clerk shall attempt to collect the costs from the person convicted.

(Emphasis added.) *Id.* at ¶ 29. *Maurer* noted that "under R.C. 2947.23(A)(1) and 2949.14, a trial court is routinely permitted to impose the cost of extradition upon

*nonindigent* felony defendants." (Emphasis added.) *Id.* at ¶ 30, citing *State v. Jones*, 2d Dist. Montgomery Nos. 25315 and 25316, 2013-Ohio-1925, ¶ 15.

{¶ 28} The instant case is distinguishable from *Maurer*. The rule recognized in *Maurer* is that a *nonindigent* felony defendant may be ordered to pay extradition costs. The state argues that "[t]here is nothing in the record to suggest that Beckwith is indigent." The record shows otherwise. First, in its February 21, 2019 journal entry of Beckwith's arraignment, the trial court declared that Beckwith is indigent and assigned him trial counsel. Then, at the sentencing hearing, the trial court twice stated that it would order restitution but both times added that the state is unlikely to receive any money as a result of this order. The trial court also did not impose any fines and waived court costs. Finally, in its October 25, 2021 sentencing entry, the trial court again declared that Beckwith is indigent and assigned him appellate counsel.

{¶ 29} Contrary to the state's contention, then, the record reveals that Beckwith was found indigent and should not have been ordered to pay extradition costs. *See State v. Jones*, 2020-Ohio-1273, 153 N.E.3d 689, ¶ 32-33 (8th Dist.) (acknowledging that extradition costs are "a necessary expense in prosecuting a case against a criminal offender who has left (and fails to return to) the jurisdiction," but noting that "extradition fees" cannot be assessed as "costs" under R.C. 2949.14 because "by its terms, R.C. 2949.14 is limited to 'non-indigent' persons 'convict[ed]' of a felony."); *see also State v. Croom*, 2d Dist. Montgomery No. 25094, 2013-Ohio-3377, ¶ 98, fn. 2, citing *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817

N.E.2d 393, ¶ 8 (While "R.C. 2947.23 requires a trial court to impose the costs of prosecution upon all convicted felons regardless of indigency" and "R.C. 2949.14 does not exempt indigent felons from paying the costs of prosecution," "extradition expenses are not equivalent to court costs for this purpose, because the statute covering them only authorizes their recovery from non-indigent defendants.").

{¶ 30} Therefore, the trial court erred not only when it referred to extradition costs as "restitution," *see Maurer*, 2016-Ohio-1380, 63 N.E.3d 534, at ¶ 33, but also when it ordered Beckwith, whom it declared indigent, to pay $1,890 in extradition costs. *See Jones* at ¶ 33; *Croom* at ¶ 98, fn. 2.

{¶ 31} Neither the cost of Beckwith's damaged ankle monitor nor the costs of Beckwith's extradition qualify as restitution under R.C. 2929.18(A)(1). *See Maddox*, 8th Dist. Cuyahoga No. 102133, 2015-Ohio-2859, at ¶ 14-15, 18. The error is more than merely nominal since, but for the error, Beckwith's sentence would not have contained an order to repay $725 as restitution, reimbursement, or some other financial sanction under R.C. 2929.18, or an order to repay $1,890 as prosecution costs under R.C. 2949.14. The state offers no authority for assessing the cost of the damaged ankle monitor as a financial sanction under R.C. 2929.18 and 2949.14 does not authorize the trial court to assess the costs of Beckwith's extradition as prosecution costs against an indigent felony offender. The trial court therefore committed plain error when it ordered Beckwith to pay $725 in restitution for the damaged ankle monitor and $1,890 in restitution for the costs of his extradition

{¶ 32} Accordingly, Beckwith's first assignment of error is sustained.

**{¶ 33}** In his second assignment of error, Beckwith argues that the restitution orders must be reversed due to ineffective assistance of counsel. Having sustained the first assignment of error, Beckwith's second assignment of error is moot. App.R. 12(A)(1)(c).

**{¶ 34}** Accordingly, we vacate the restitution ordered by the trial court in the amounts of $725 and $1,890 but otherwise affirm the conviction and remaining portions of Beckwith's sentence.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
EILEEN T. GALLAGHER, J., CONCUR