[Cite as *Parma Hts. v. Owca*, 2017-Ohio-179.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 103606

---

## CITY OF PARMA HEIGHTS

PLAINTIFF-APPELLEE

vs.

## JERRY OWCA

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED IN PART,
### REVERSED IN PART AND REMANDED

---

Criminal Appeal from the
Parma Municipal Court
Case No. 14TRC19791

**BEFORE:** Blackmon, J., Keough, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** January 19, 2017

**ATTORNEY FOR APPELLANT**

Paul A. Mancino, Jr.
Mancino, Mancino & Mancino
75 Public Square Building
Suite 1016
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael D. Pokorny
Law Director
City of Parma Heights

Thomas J. Kelly
Prosecutor
City of Parma Heights
6281 Pearl Road
Parma Heights, Ohio 44130

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Jerry Owca ("Owca") appeals his convictions for driving under the influence of alcohol or drug abuse pursuant to R.C. 4511.19(A)(1)(a) and having a prohibited blood concentration of marijuana metabolite in violation of R.C. 4511.19(A)(1)(j)(viii). He assigns 16 assigned errors for our review.[1]

{¶2} Having reviewed the record and pertinent law, we affirm Owca's convictions but reverse and remand for resentencing regarding the merger of allied offenses. The apposite facts follow.

{¶3} Owca was charged with a felony complaint for the possession of heroin and also issued traffic citations for driving under the influence of alcohol/drug abuse and having a prohibited blood concentration of marijuana metabolite. The felony possession charge was transferred to the Cuyahoga County Common Pleas Court, where Owca entered a guilty plea to two counts of drug possession. The misdemeanor counts remained in the Parma Municipal Court.

{¶4} Owca filed a motion to suppress evidence related to the misdemeanor counts, which was denied after a hearing was conducted. The matter proceeded to a jury trial where the following evidence was presented.

{¶5} On August 5, 2014, at around 6:45 p.m., John Hjort was driving on West 130th Street and Snow Road when he observed a white work van in front of him swerve several times into oncoming traffic. He stated he followed the van for about three miles

---

[1]*See* appendix.

until the van pulled into a convenient store parking lot. Hjort called 911 and watched the van until the police arrived.

{¶6} In response to the call, Officer Brian Hansen proceeded to the parking lot where he found the van matching the caller's description. The van was parked so that it was overlapping two spaces. While the officer waited for a back-up officer to arrive, he observed Owca from an angle so that Owca could not see him. He watched Owca putting a sheet of plastic up to his face and rub it on his nose multiple times. Officer Felkonis arrived and parked in front of the van. When Owca saw Officer Felkonis, Officer Hansen observed Owca frantically taking things out of his lap and shuffling around near the radio and center console. Officer Hansen ordered Owca to stop moving, but he continued to move before eventually stopping.

{¶7} When Owca exited the vehicle, he was unsteady and almost fell to the ground. Officer Hansen helped him to stand. According to the officer, Owca was shaking and did not have good control of his body. Based on his behavior, the officer conducted field sobriety tests. When performing the one-legged stand test, Owca was unable to keep his foot up for more than a second. He also did not pass the walk-and-turn test. He started walking before the officer finished the instructions; could not get into the start position with his feet heel to toe; could not walk heel to toe; stepped off the line several times; and, turned improperly. Officer Hansen testified that it was hard to perform the Horizontal Gaze Nystagmus ("HGN") test due to Owca's shaking, but

he conducted the test to the best of his ability. The test showed sustained nystagmus prior to 45 degrees.

{¶8} Prior to removing Owca from the scene, Officer Felkonis showed Officer Hansen three baggies of a white substance he found in the van while conducting an inventory of the vehicle. Based on this discovery, Officer Hansen transported Owca to the hospital so that a blood draw could be taken. According to the officer, he read Owca his rights regarding the blood draw and Owca consented.

{¶9} Officer Felkonis testified that in his opinion Owca was having a hard time following Officer Hansen's instructions when performing the field sobriety test, and that in his opinion, Owca did not pass the tests. He stated that he found the three small baggies of the white powdery substance in the center console area of the van. Along with the baggies he found a straw made out of a pen.

{¶10} Edward Yingling ("Yingling") of the Ohio State Highway Patrol Laboratory testified that he tested Owca's blood sample. He discovered five different drugs in the sample: 5.23 nanograms per milliliter of marijuana metabolite, 256.89 nanograms per milliliter of Diazepam, a.k.a. Valium, 56.29 nanograms per milliliter of Oxycodone, 117.80 nanograms per milliliter of N-Desmethyldiazepam, and 341.98 nanograms per milliliter of Morphine. He stated that marijuana metabolite is a drug of abuse and that Ohio law prohibited the amount found in Owca's blood. The remaining drugs were prescription drugs but would be drugs of abuse if not used properly. There was no evidence that Owca had a prescription for these drugs.

{¶11} Dr. Matt Likavec ("Dr. Likavec"), a neurosurgeon for 35 years, reviewed Yingling's laboratory report. In his opinion, a person driving with the amount and type of drugs found in Owca's blood would be impaired.

{¶12} Based on the evidence presented, the jury found Owca guilty of both misdemeanor counts. For each count, the trial court sentenced Owca to 180 days incarceration, imposed a fine of $375, and suspended Owca's license for three years. The trial court then merged the sentence on both counts.

### Motion to Suppress

{¶13} In his first, second, third, and fourth assigned errors, Owca challenges the denial of his motion to suppress. Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is, therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter*, 72 Ohio St.3d 545, 552, 651 N.E.2d 965 (1995); *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992).

{¶14} Consequently, when reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside*. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. *State v. Anderson*, 100 Ohio App.3d 688, 691, 654 N.E.2d 1034 (4th Dist.1995).

**{¶15}** Owca contends that his right to due process was violated when the trial court ruled that the arresting officer's testimony given on direct examination showed that the officer had probable cause to arrest Owca. During the cross-examination of the officer, defense counsel's questions inferred that the officer conducted field sobriety tests and arrested Owca even though there was no indication that Owca had been drinking alcohol. The court interjected as follows:

> He testified they called him in weaving all over the road, he was parked crooked between two parking spaces, he saw him licking, like in a licking motion rubbing paper, he had a ton of probable cause. So don't change it, there's no jury here, come on, let's go.

Tr. 39.

**{¶16}** The following dialogue then occurred between defense counsel and the trial court:

> Counsel:  Has the court already decided this case?
>
> Court:  On probable cause, absolutely, he has sufficient probable cause. Yes, if you can change that somehow then you're welcome to do that but yes he has put forth a prima facie case for probable cause, absolutely he has.

Tr. 39.

**{¶17}** After further discussion, defense counsel asked again, "are you making a ruling at this point?" The trial court clarified as follows:

No, I'm telling you to move along. You've changed his testimony, and I'm instructing you not to. You said so you're saying there was no alcohol, no slurred speech, no anything and you have no probable cause, which is just something you made up, it's not in evidence. What's in evidence is that he had a call that he was weaving all over, driving into traffic, he's parking between the lines crooked, he's rubbing plastic against his face, there's yellow containers all over there is an abundance of prima facie probable cause. What I'm telling you is don't change the facts, let's keep them what they are and move on.

Tr. 40.

{¶18} The court's ruling at this point was not definitive because not all of the evidence had been presented. The trial court was merely stating that the arresting officer's testimony at that juncture established probable cause. Accordingly, we find no error.

{¶19} Owca also argues that the result of his blood draw should have been suppressed because his blood was drawn without a warrant and without his consent. "Without consent, a blood draw requires probable cause and either a warrant, or exigent circumstances justifying a search without a warrant." *State v. Rawnsley*, 2d Dist. Montgomery No. 24594, 2011-Ohio-5696, ¶ 15. Although Owca contends otherwise, there was evidence that Owca consented to the blood draw. Officer Hansen testified that he read the required BMV Form 2255 to Owca and that in response Owca consented to

having his blood drawn. Aaron Kastanis, the paramedic who drew the blood, testified that he recalled being present when the officer read the form to Owca. He stated that there was nothing that would lead him to believe that the consent was involuntary or coerced. Because the trial court assumes the role of "trier of fact" in motions to suppress, we defer to the trial court when resolving factual questions. Accordingly, we find no error.

{¶20} Owca argues that the officers' warrantless stop and seizure were illegal. The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One exception is an investigative stop. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A police officer may make a brief, warrantless, investigatory stop of an individual where the officer reasonably suspects that the individual is or has been involved in criminal activity. *Id*. at 21. In reaching that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991), citing *Terry*. Whether an investigatory stop is reasonable depends upon the totality of the circumstances surrounding the incident. *State v. Williams*, 51 Ohio St.3d 58, 60, 554 N.E.2d 108 (1990). A court evaluating the validity of a *Terry* stop must consider the totality of the circumstances as "viewed through the eyes of the

reasonable and prudent police officer on the scene who must react to the events as they unfold." *Andrews* at 87-88.

{¶21} Here, the totality of the circumstances supported the officers' conducting an investigatory stop of Owca. Officer Hansen was responding to a call regarding an impaired driver. Owca claims that because the call was made by an anonymous caller and the officer did not observe the erratic driving, he could not conduct an investigative stop based on this information. At trial, it was clear that the caller was not anonymous as he testified at trial. However, the caller did not testify at the suppression hearing. Nonetheless, Officer Hansen testified that he found the van matching the description described by the caller parked across two parking spaces. He did not immediately order Owca out of the van, but observed Owca put a sheet of plastic up to his face several times and either rub it on his face or lick it. When Owca saw the back-up officer, Owca quickly tried to hide items in the middle console area of the car. At that point, Hansen approached the driver side of the van and ordered Owca to stop moving. Owca continued to move around before eventually complying. Based on these facts, the officers had witnessed enough to conduct a *Terry* stop to investigate.

{¶22} We also conclude the officer did not violate Owca's Fourth Amendment rights by ordering him from the car. The officer testified he ordered Owca out of the vehicle because based on Owca's movements, he was not sure if Owca had a weapon.[2]

---

[2]At trial, Officer Hansen testified that Owca exited the vehicle without being asked.

The United States Supreme Court has stated that asking a lawfully stopped motorist to exit his vehicle is a de minimus intrusion that does not even rise to the level of a "petty indignity," finding _that such a mere inconvenience cannot outweigh all of the legitimate concerns for officer safety, which the officer need not express or fear in a particular case. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). If reasonable suspicion thereafter arises, an officer can proceed with other investigatory steps that require reasonable suspicion such as the pat-down in *Mimms* (or field sobriety tests in this case). *Id.*

{¶23} The Ohio Supreme Court has agreed with the rationale in *Mimms* and explained that *Mimms* dispenses with the requirement that the officer possess reasonable suspicion of criminal activity before he orders the driver out of an already lawfully stopped vehicle. *State v. Evans*, 67 Ohio St.3d 405, 407-408, 618 N.E.2d 162 (1993). According to Officer Hansen, when Owca tried to exit the vehicle he stumbled out of the van and had trouble standing. At that point, he decided to conduct the field sobriety tests.

{¶24} Owca also argues that the trial court erred by failing to suppress the HGN test because the officer admitted that he omitted several steps in conducting the test. The officer testified that Owca's head was shaking during the HGN test. The trial court denied the suppression as to the tests, concluding:

> The defendant cannot be so under the influence of drugs or alcohol that he
> can't keep his head straight and then challenge the test because I was so

impaired the test shouldn't count, that's an absurd argument and it's not going to work. The officer conducted the test as provided by the NHTSA Manual. Many problems that occurred with the tests were created by the Defendant's own actions and impairment.

*Id.* at 103. Moreover, the HGN test was only one factor in determining that Owca was under the influence. The officer also testified that Owca was shaking and having a hard time standing and that he was unable to perform the one-legged-stand test and the walk-and-turn test. Therefore, even without the HGN test, the officer had sufficient evidence that Owca was under the influence. Accordingly, Owca's first, second, third, and fourth assigned errors are overruled.

## Expert Witness

{¶25} We will address Owca's fifth and ninth assigned errors together because they both concern the state's expert witnesses.

{¶26} Owca argues that the trial court erred by qualifying and declaring Dr. Likavec and Yingling to be experts in front of the jury and relies on *United States v. Johnson*, 488 F.3d 690 (6th Cir.2007), in support of this argument. This court addressed a similar argument in *State v. Monroe*, 8th Dist. Cuyahoga No. 94768, 2011-Ohio-3045, and held:

> Defendant relies on *United States v. Johnson*, 488 F.3d 690 (6th Cir.2007),
>
> in arguing the court erred by identifying Dr. Miller as an expert in front of
>
> the jury. However, in *Johnson*, the Sixth Circuit upheld the trial court's

classification of a police officer as an expert. Although the court in Johnson did indicate a preference that the trial courts refrain from advising the jury of a qualified witness's designation as an expert, it determined that the trial court had not committed plain error by doing so. In this case, the defense did not object to Dr. Miller's qualifications as an expert, the record supports his qualifications as an expert, and the court's recognition of his expert qualifications before the jury was not plain error.

*Id.* at ¶ 52.

**{¶27}** Likewise, in the instant case, defense counsel did not object to Dr. Likavec's or Yingling's qualifications, and the record supports their qualifications as experts. Therefore, we find no plain error occurred.

**{¶28}** Owca also contends that the trial court erred by allowing Dr. Likavec to testify to the lab results without providing an expert report.[3] Crim.R. 16(K) requires that an expert provide a report summarizing the "expert's testimony, findings, analysis, conclusions, or opinion * **." In the instant case, the trial court allowed Dr. Likavec to testify without providing an expert report over defense counsel's objection. His testimony concerned whether the drugs listed on Owca's lab results would have impaired Owca.

---

[3]We note that this argument only applies to the driving under the influence count because the lab results showed that Owca had a prohibited level of marijuana metabolite in violation of R.C. 4511.19(A)(a)(j)(vii); thus, Dr. Likavec's testimony was unnecessary.

**{¶29}** Although we agree that the trial court erred by allowing Dr. Likavec to testify, we conclude it was not prejudicial error. Other testimony at trial showed that Owca was impaired by the drugs. Hjort testified he saw Owca swerve into oncoming traffic several times. The officers testified to Owca's inabiliity to stand without assistance and inability to preform the field sobriety tests. The officers also testified to finding baggies of a white substance in Owca's car. Officer Hansen observed Owca sniffing a sheet of plastic. Additionally, Yingling, who tested Owca's blood, testified to the lab results and the various drugs and the amounts of each found in Owca's system. Based on this evidence, Dr. Likavec's testimony was unnecessary because there was sufficient evidence that Owca was impaired by drugs while driving. This was not a case where there was no evidence regarding what was causing the driver to be impaired. *See Cleveland v. Turner*, 8th Dist. Cuyahoga No. 99183, 2013-Ohio-3145. Accordingly, Owca's fifth and ninth assigned errors are overruled.

## Precluded from Cross-Examination

**{¶30}** In his sixth assigned error, Owca argues the trial court erred by not permitting defense counsel to cross-examine the arresting officer and paramedic on information contained in printed authorities.

**{¶31}** Owca attempted to cross-examine Officer Hansen on information contained within the National Highway Traffic Safety Administration ("NHTSA") manual to prove that the manual's field sobriety tests only applied to driving under the influence of alcohol, not drugs. Owca also attempted to cross-examine the hospital employee that

drew Owca's blood regarding information contained in a phlebotomy textbook. The trial court did not permit cross-examination based on these written materials because they constituted hearsay.

{¶32} We agree. The Ohio Supreme Court in *Stinson v. England*, 69 Ohio St.3d 451, 633 N.E.2d 532 (1994), held that the contents of "learned treatises" are not admissible to prove the truth of the statements contained therein. *Id.* at 458. The court went on to explain that

> [I]n Ohio, a learned treatise may be used for impeachment purposes to demonstrate that an expert witness is either unaware of the text or unfamiliar with its contents. Moreover, the substance of the treatise may be employed only to impeach the credibility of an expert witness who has relied upon the treatise * * * or has acknowledged its authoritative nature.

*Id.*

{¶33} Because Owca was not seeking to use the books to impeach the witnesses, the trial court did not err by refusing to allow the books to be used during cross-examination. Accordingly, Owca's sixth assigned error is overruled.

### Trial Court's Conduct

{¶34} In his seventh assigned error, Owca argues that the trial court's conduct deprived him of a fair trial. He contends that the trial court interrogated his witnesses, interrupted defense counsel, and accused defense counsel of improper conduct.

{¶35} Pursuant to Evid.R. 614(B), a trial court "may interrogate witnesses, in an impartial manner, whether called by itself or by a party." Because Evid.R. 614(B) permits the trial court discretion to decide whether to question a witness, appellate courts

review the trial court's questioning under an abuse of discretion standard. *State v. Stadmire*, 8th Dist. Cuyahoga No. 81188, 2003-Ohio-873, ¶ 26; *State v. Davis*, 79 Ohio App.3d 450, 454, 607 N.E.2d 543 (4th Dist.1992). It has been recognized that in a jury trial, the court's participation by questioning must be limited, "lest the court consciously or unconsciously indicate to the jury its opinion on the evidence or on the credibility of a witness." *State ex rel. Wise v. Chand*, 21 Ohio St.2d 113, 256 N.E.2d 613 (1970), paragraph three of syllabus. A review of the record shows that the trial court's questions were limited and did not permeate the trial. Additionally, the questions did not indicate that the trial court had abdicated its neutrality in judging the case.

{¶36} Nor does our review of the record show any prejudice occurred when the trial court chastised defense counsel in front of the jury regarding the jury instructions. We agree that the trial court did accuse defense counsel of making a false statement of law; however, a side bar was then called to discuss the matter. Defense counsel at the side bar requested that the trial court issue a curative instruction, and the trial court agreed. When the jury reconvened, the trial court stated as follows:

> The jury has been returned to the Courtroom. We are going to resume
>
> closing arguments. [Defense Counsel] will get a chance to address the jury
>
> again and we'll start his 20 minute slate clean. I will inform the jury that
>
> this Court was the source of confusion and I did in cutting and pasting and
>
> putting together you are going to see 11 pages of Jury Instructions and
>
> cutting and pasting and taking off the various websites and statutes that I

needed to put together I inadvertently had in an additional element in these Jury Instructions that I've given to him. So I am in large part to blame for the confusion that just arose here. The instructions have been fixed by the Court and the jury will be instructed, the law will be as the Court instructs you what the law is. As this point in time, I'll offer my apology once again and [Defense Counsel].

Tr. 200.

{¶37} Curative instructions are presumed to be an effective way to remedy errors that occur during trial. *State v. Treesch*, 90 Ohio St.3d 460, 739 N.E.2d 749 (2001). A jury is presumed to follow and comply with the instructions given to them by the trial court. *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990). We have no reason to conclude the jury did not follow these instructions. Accordingly, Owca's seventh assigned error is overruled.

## Amendment of the Charges

{¶38} In his eighth assigned error, Owca argues that the trial court erred by amending the charges when instructing the jury by including a charge that combined operating a vehicle "under the influence of a drug of abuse and/or alcohol" and by also instructing the jury that Owca was charged with operating a vehicle with a prohibited drug concentration.

{¶39} We conclude no error occurred. Owca was charged with two counts. The first count was pursuant to R.C. 4511.19(A)(1)(a) and the second count was pursuant to

R.C. 4511.19(A)(1)(j)(viii)(I).  R.C. 4511.19(A)(1)(a) requires proof that the defendant operated a vehicle "under the influence of alcohol, a drug of abuse, or a combination of them."  R.C. 4511.19(A)(1)(j)(viii)(I) requires showing the defendant was operating a vehicle while "under the influence of alcohol, a drug of abuse, or a combination of them" when the alcohol, drug, or combination is in a certain concentration.  Thus, the trial court's instruction was proper.  Accordingly, Owca's eighth assigned error is overruled.

## Prosecutorial Misconduct

{¶40} In his tenth assigned error, Owca argues that he was deprived of a fair trial when the prosecutor expressed several times that he thought Owca was guilty.

{¶41} In order to prove prosecutorial misconduct, appellant must demonstrate that the remarks were improper and that the remarks prejudicially affected his substantial rights.  *State v. Treech*, 90 Ohio St.3d 460, 461, 739 N.E.2d 749 (2001).  The reviewing court must evaluate the remarks in the context of the entire trial. *Id.*  In so doing, we focus on the fairness of the trial not the culpability of the prosecutor.  *State v. Jones*, 90 Ohio St.3d 403, 420, 739 N.E.2d 300 (2000).

{¶42} The comments that Owca refers to occurred during closing argument where the prosecutor stated as follows:

Ladies and gentleman there has been an overwhelming amount of evidence that has been presented to you on each and every element of the offense such that you should find Mr. Owca guilty on both counts.

* * *

The law says quite plainly, he's in the car, he's operating the car, he has over 5 nanograms per milliliter, he's guilty.

* * *

There's a blood draw, there's a test, the test comes over the legal limit. By law, by statute he's guilty of that charge.

Tr. 195.

**{¶43}** Generally, prosecutors are entitled to considerable latitude in opening statement and closing argument. *State v. Ballew*, 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996). In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). Here, we find the prosecutor's comments were not improper. As the Supreme Court in *Lott* held, the prosecutor is not permitted to base an opinion on the defendant's guilt based on "facts outside the evidence, or * * * on inferences based on facts outside the evidence." In the instant case, the prosecutor's opinion was based on the evidence submitted at trial; therefore, the comments were not improper. Accordingly, Owca's tenth assigned error is overruled.

## Insufficient Evidence

**{¶44}** In his eleventh assigned error, Owca argues that there was insufficient evidence to support his convictions. Owca contends that he was only charged with operating a vehicle while under the influence, which only covers operating a vehicle under the influence of alcohol not drugs.

**{¶45}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134, citing *Cleveland v. Pate*, 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571, citing *State v. Mitchell*, 8th Dist. Cuyahoga No. 95095, 2011-Ohio-1241._

**{¶46}** A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the prosecution has met its burden of production at trial. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). On review for sufficiency, courts are to assess not whether the prosecution's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.*

**{¶47}** Owca was charged with operating a vehicle while under the influence pursuant to R.C. 4511.19(A)(1)(a) and (j)(viii)(I) that provide in relevant part:

> (A)(1) No person shall operate any vehicle * * * within_this state, if, at the time of the operation, any of the following apply:
>
> (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.
>
> * * *
>
> (j)__Except as provided in division (K) of this section, the person has a concentration of any of the following controlled substances or metabolites of a controlled substance in the person's whole blood, blood serum or plasma, or urine that equals or exceeds any of the following:
>
> * * *

(viii)__Either of the following applies:

(I)__The person is under the influence of alcohol, a drug of abuse, or a combination of them, and, as measured by gas chromatography mass spectrometry, the person has a concentration of marijuana metabolite in the person's urine of at least fifteen nanograms of marijuana metabolite per milliliter of the person's urine or has a concentration of marijuana metabolite in the person's whole blood or blood serum or plasma of at least five nanograms of marijuana metabolite per milliliter of the person's whole blood or blood serum or plasma.

{¶48} A reading of the above sections of the statute clearly shows that they are not restricted solely to impairment by alcohol. The plain language of the statute clearly includes drugs of abuse or more specifically, as relevant to the second count, marijuana metabolite in certain concentrations.

{¶49} The evidence submitted at trial showed that Owca was impaired to the extent that he swerved out of his lane and directly into oncoming traffic at least twice, forcing motorists to take evasive action to avoid a collision. When he stepped out of the vehicle he stumbled and needed assistance to stand. He failed the field sobriety tests administered by the officer. The toxicology results of Owca's blood revealed he had five different drugs in his system: 5.23 nanograms per milliliter of marijuana metabolite, 256.89 nanograms per milliliter of Diazepam, a.k.a. Valium, 56.29 nanograms per milliliter of Oxycodone, 117.80 nanograms per milliliter of N-Desmethyldiazepam, and 341.98 nanograms per milliliter of Morphine. Based on this evidence, there was sufficient evidence to support Owca's convictions. Accordingly, his eleventh assigned error is overruled.

**Sentencing**

**{¶50}** We will consider Owca's twelfth and thirteenth assigned errors together because they concern his sentence.

**{¶51}** Owca argues his Fifth Amendment right was violated when the trial court interrogated him in front of the jury during sentencing. However, because his conviction had already occurred, we do not see how Owca's constitutional right was violated by the court questioning him in front of the jury for purposes of sentencing.

**{¶52}** Owca also contends the trial court erred by relying on evidence outside the record when determining his sentencing. The trial court considered the fact that Owca had a prior conviction for driving under the influence where he killed three people. The court also noted that since then, Owca had ten DUI convictions. In considering these factors, the trial court was complying with R.C. 2929.22. R.C. 2929.22(B) states that in determining the appropriate sentence for a misdemeanor the court shall consider:

> (b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;
>
> (c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a_danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;
>
> * * *

(e) Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B)(1)(b) and (c) of this section;

**{¶53}** Thus, consideration of Owca's prior history of driving while impaired was a relevant consideration in determining his sentence. Owca also contends that the trial court failed to reveal from what document the court was obtaining the information regarding Owca's prior record. However, we note that no objection was made by Owca at the time of sentencing. If he had objected, the trial court could have identified the report upon which it was relying. Therefore, Owca has waived his objection to the trial court's reliance on the information. *State v. Cody*, 8th Dist. Cuyahoga No. 100797, 2015-Ohio-2261, ¶ 33. Moreover, Owca does not contend that the information was incorrect.

**{¶54}** Owca also argues that the trial court's extensive questioning and berating of him at sentencing showed that the court was biased. A review of the entire record shows the trial court was not biased. It is not reversible error for a sentencing judge, in explaining his sentence, to make critical statements about a defendant's conduct. *State v. Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, ¶ 27. Moreover, the exclusive means by which allegations of judicial bias in common pleas court cases should be raised is an affidavit of disqualification filed in the Ohio Supreme Court. R.C. 2701.02; *State v. Wilson*, 8th Dist. Cuyahoga No. 91971, 2010-Ohio-1196, ¶ 101. Accordingly, Owca's twelfth and thirteenth assigned errors are overruled.

## Allied Offenses

{¶55} In his fourteenth assigned error, Owca argues that although the trial court correctly found the offenses to be allied offenses, the trial court erred by not requesting the prosecutor to elect which count to sentence on.

{¶56} A defendant may be indicted and tried for allied offenses of similar import, but may be sentenced on only one of the allied offenses. *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149. ¶ 42, citing *Maumee v. Geiger*, 45 Ohio St.2d 238, 244, 344 N.E.2d 133 (1976). Because R.C. 2941.25(A) protects a defendant only from being punished for allied offenses, the determination of the defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 27.

{¶57} Here, although the trial court stated that the sentences merged, it first sentenced Owca on each count to 180 days incarceration, imposed a $375 fine, and suspended his driver's license for three years. After imposing the sentence on both counts, the trial court then stated that the sentences "merged" and that Owca would serve a total of 180 days, pay a fine of $375, and have his driver's license suspended for three years. Although the state argues this was harmless, the trial court was not in fact "merging" in the sense of sentencing for allied offenses, but instead imposed concurrent sentences. The court cannot sentence on both counts and then merge the counts when the counts are allied offenses. The court can only impose a sentence on one count.

**{¶58}** Thus, while we agree with the trial court that the counts are allied offenses and merge, the court erred by the manner in which it imposed the sentence. The trial court must direct the state to elect which count it wishes to proceed for purposes of sentencing and then proceed to only sentence on that count. *State v. Fairfield*, 8th Dist. Cuyahoga No. 97446, 2012-Ohio-5060, ¶ 29. Accordingly, the fourteenth assigned error is sustained and the matter remanded for a new sentencing hearing regarding the allied offenses. Specifically, the state must elect which count it chooses for the trial court to proceed to sentencing.

## Jury Instructions

**{¶59}** In his fifteenth assigned error, Owca argues that the trial court usurped the function of the jury by instructing the jury that marijuana, Diazepam, N-Desmeithyldiazepam, Oxycodone, and Morphine were all drugs of abuse. Owca contends that the trial court should have defined the term "drug of abuse" and allowed the jury to determine if the drugs found in Owca's blood met the definition.

**{¶60}** The trial court did not err in instructing the jury that marijuana, Diazepam, N-Desmeithyldiazepam, Oxycodone, and Morphine were all drugs of abuse. The determination whether a drug is a "drug of abuse" is one of law. *State v. Anderson*, 11th Dist. Lake No. 2005-L-179, 2006-Ohio-5371, ¶ 20; *State v. Daugert*, 11th Dist. Lake No. 89-L-14-091, 1990 Ohio App. LEXIS 2719, at *5 (June 29, 1990); *State v. Reed*, 14 Ohio App.3d 63, 68, 470 N.E.2d 150 (4th Dist.1983). Pursuant to R.C. 4506.06(M),

R.C. 4729.01(F), and R.C. 3719.01, the drugs qualified as drugs of abuse. Accordingly, Owca's fifthteenth assigned error is overruled.

## Jury Verdict

{¶61} In his sixteenth assigned error, Owca argues that the trial court erred by submitting a jury verdict form that did not identify the specific substance of abuse. The verdict form stated the jury found Owca "guilty or not guilty of Operating Under the Influence of Alcohol and/or Drugs of Abuse." Owca contends that the jury should have had to choose which substance of abuse, i.e. alcohol or drugs. We disagree.

{¶62} "[A] general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." *State v. Johnson*, 46 Ohio St.3d 96, 104, 545 N.E.2d 636 (1989). "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* Here, the evidence was overwhelming that Owca was under the influence of drugs not alcohol. Therefore, the trial court's general unanimity instruction and the verdict form were sufficient. Accordingly, Owca's sixteenth assigned error is overruled.

{¶63} Judgment affirmed in part, reversed in part and remanded for a new sentencing hearing.

It is ordered that the parties pay their respective costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Parma Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

ANITA LASTER MAYS, J., CONCURS;
KATHLEEN ANN KEOUGH, A.J., DISSENTS;
(SEE ATTACHED DISSENTING OPINION)

KATHLEEN ANN KEOUGH, A.J., DISSENTING

{¶64} I respectfully dissent.  I would find merit to Owca's seventh and ninth assignments of error, reverse his convictions, and order a new trial.

{¶65} Addressing Owca's ninth assignment of error, I would find that the trial court abused its discretion by allowing Dr. Likavec to testify despite the clear violation of Crim.R. 16(K).  The majority recognizes the error, but concludes that the error is harmless.  Even assuming overwhelming evidence of Owca's guilt was presented, I cannot support the majority's harmless error conclusion when the trial court enters a blanket denial of  Owca's motion in limine without seeking an explanation by the prosecution for its disregard of Crim.R. 16(K).

{¶66} Pursuant to Crim.R. 16(K),

> An expert witness for either side *shall* prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and *shall* include a summary of the expert's qualifications.  The written report and summary of qualifications *shall* be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party.  Failure to disclose the written report to opposing counsel *shall* preclude the expert's testimony at trial.

(Emphasis added.)  Other than the trial court's discretion in expanding the period of providing the report, the requirements of this rule are mandatory.

{¶67}  In this case, the trial court seemed to be satisfied that the prosecution complied with Crim.R. 16(K) when the prosecution disclosed Dr. Likavec's name to defense counsel a week before trial.  However, the record is clear that no report was

prepared by Dr. Likavec and that the defense was not apprised of what Dr. Likavec's testimony would entail. This failure to comply with the mandates of Crim.R. 16(K) equates to a trial by ambush. This type of activity is exactly what the rule was designed to prevent, and condoning this type of trial practice and declaring discovery violations harmless only leads to an abuse of process and ultimately renders Crim.R. 16(K) superfluous.

{¶68} Regarding Owca's seventh assignment of error, I would find that the trial judge's disparaging comments made to defense counsel deprived Owca of a fair trial. These comments occurred throughout the case proceedings, continued during trial, and culminated with the trial judge essentially accusing defense counsel of lying to the jury and misstating the law during closing arguments.

{¶69} Although the trial judge attempted to give an explanation to the jury that he was the source of the confusion by providing inaccurate jury instructions, the trial judge's explanation or curative instruction was insufficient to properly inform the jury that defense counsel was not misleading the jury and was actually reading the instruction as provided by the trial court. Furthermore, my reading of the "curative instruction" does not reveal any type of apology offered to defense counsel; rather, there was a vague apology to the jury.

{¶70} Based on the record before this court, which includes the affidavit of disqualification filed by defense counsel against the trial judge, I would find that the trial judge's accusation deprived Owca of a fair trial.

**{¶71}** For these reasons, I would reverse Owca's convictions and order a new trial.

## APPENDIX

Assignments of Error

I. Defendant was denied due process of law and a fair hearing when the court ruled during the direct examination of the arresting officer that there was probable cause.

II. Defendant was denied due process of law when the court overruled his motion to suppress based on a warrantless draw of blood.

III. Defendant was denied due process of law when the court overruled the warrantless stopping and seizure of defendant.

IV. Defendant was denied due process of law when the court overruled defendants motion to suppress concerning the HGN test.

V. Defendant was denied due process of law and a fair trial when the court declared a witness to be an expert in the presence of the jury.

VI. Defendant was denied a fair trial when the court precluded defense counsel from cross-examining the arresting officer.

VII. Defendant was denied a fair trial by reason of the court's interrogation of witness, interruption of defense counsel, and accusing defense counsel of improper conduct.

VIII. Defendant was denied due process of law when the court amended the charges contained in the complaint in its instruction to the jury.

IX. Defendant was denied due process of law when the court allowed a witness to testify as an expert without a written report to testify.

X. Defendant was denied a fair trial when the prosecutor expressed his personal opinion of defendant's guilt.

XI. Defendant was denied due process of law when the court overruled the motion for acquittal.

XII.    Defendant was denied due process of law when the trial court excoriated defendant in the presence of the jury violated his fifth amendment right at sentencing.

XIII.    Defendant was denied due process of law and a fair trial in sentencing when the court relied upon matters outside the record.

XIV.    Defendant was denied due process of law when the court imposed multiple sentences without a determination as to which of the two offenses should merge.

XV.    The court usurped a jury function by stating as a matter of law that certain controlled substances at issue in this case were drugs of abuse.

XVI.    Defendant was denied due process of law when the court submitted a jury verdict which contained and/or instead of identifying the specific substance.