[Cite as *State v. Goldsby*, 2025-Ohio-967.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 114118 |
| MICHAEL GOLDSBY, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** March 20, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-687143-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Danielle Muster, Assistant Prosecuting
Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

MICHAEL JOHN RYAN, P.J.:

{¶ 1} Defendant-appellant Michael Goldsby appeals his felonious-assault, strangulation, abduction, inducing-panic, and domestic-violence convictions, which were rendered after a bench trial. Goldsby also challenges his sentence and the

imposition of restitution.  After a thorough review of the facts and pertinent law, we affirm the convictions and sentence, but reverse and remand for vacation of the restitution order.

**Factual and Procedural History**

{¶ 2} In December 2023, Goldsby was charged in a six-count indictment with the following crimes:  Count 1, felonious assault in violation of R.C. 2903.11(A)(1); Count 2, strangulation in violation of R.C. 2903.18(B)(2); Count 3, strangulation in violation of R.C. 2903.18(B)(3); Count 4, abduction in violation of R.C. 2905.02(A)(2); Count 5, inducing panic in violation of R.C. 2917.31(A)(3); and Count 6, domestic violence in violation of R.C. 2919.25(A).  After Goldsby waived his right to a jury trial, the matter proceeded to a bench trial at which the following facts were established.

{¶ 3} The subject incident occurred on November 26, 2023.  At that time, Goldsby and the victim (his girlfriend) lived together with their two young children in an apartment in Parma, Ohio.  In the early morning hours of the day in question, the victim sent text messages to 9-1-1 stating that Goldsby had hit her and would not let her leave the apartment.  The first two text message were sent at 5:33 a.m. and read, "Help Me[.]" "Please the father of my child hit me in the face."  She identified the perpetrator as "Michael Goldsby" and said that she could not call on the phone.  The victim further texted that her vision was "blurry."  She provided the dispatcher with her address and requested an ambulance.  The victim also texted "he doesn't let me leave."

{¶ 4} At approximately 6:00 a.m., two Parma police officers arrived at the apartment and knocked on the victim and Goldsby's door; no one answered. The victim texted that Goldsby would not let her answer the door. Body-camera video admitted into evidence shows the police knocking on the door, announcing themselves as "police," and calling out Goldsby's name. Other law enforcement officials, including SWAT, arrived as well. The apartment building was evacuated and police were stationed inside and outside of the apartment complex. At one point, officers heard children crying in Goldsby and the victim's apartment and saw the lights go on and off a couple of times.

{¶ 5} A SWAT hostage negotiator attempted to speak with Goldsby; he was unsuccessful but was able to speak to Goldsby's brother. The brother contacted Goldsby and convinced Goldsby to surrender; this occurred at approximately 8:30 a.m. Goldsby was taken into custody, and the victim was taken to the hospital. She suffered an injury near her left eye and a fracture in her nose. Photographs of the victim and her medical records were admitted into evidence. The victim recounted the events to a police officer at the hospital and to another officer the following day and completed a signed statement. In her statement the victim said that Goldsby also choked or strangled her. One of the officers testified that she had petechia on her neck; petechia is a blood pattern that occurs from possible choking.

{¶ 6} At the final pretrial hearing, the defense told the court that the victim had been "trying to walk this thing back" since two days after it occurred; the defense reiterated that sentiment in its opening statement. The State requested to call the

victim as a court witness; the trial court stated that it would hold the request in abeyance and see how the victim testified. Once it was clear that the victim was maintaining her recantation, the trial court permitted the State to question her as a court witness over the defense's objection. The victim stated that her trial testimony, which was under oath, was the truth, and what she had previously stated, which was not under oath, was not true. According to the victim, on the morning of the incident, Goldsby woke her up because he was mad about something he saw on her phone. She was mad that he was looking through her phone and lunged at him. As the victim was lunging toward Goldsby, Goldsby stepped out into the hallway; she tripped and fell face first into the bedroom door latch.

{¶ 7} According to the victim, Goldsby only learned that the police were at the apartment when his brother called him. The victim further testified that she never heard the police knock on the apartment door or call out Goldsby's name. Police presence at the complex is a frequent occurrence, and she believed the police were there for another reason.

{¶ 8} The victim admitted that she had previously called the police on Goldsby, but he was never arrested because he never assaulted her. She explained that she was a victim of domestic violence in a prior relationship, she gets mad, has flashbacks, and calls the police. According to the victim, the police intimidated and stalked her. She testified that at the scene, "The SWAT team holding me at gunpoint with my two kids there, absolutely intimidated me," and the police officer at the hospital "stalked" her.

{¶ 9} Officers testified that numerous Parma law enforcement officials responded to this incident, including some who had to work overtime.

{¶ 10} At the close of the State's case, the defense made a Crim.R. 29 motion for judgment of acquittal on all counts; the trial court denied the motion.

{¶ 11} Goldsby testified. He corroborated the victim's testimony about the victim getting mad at him for looking through her phone and injuring herself while lunging at him. Goldsby testified that although the victim was complaining about her eye hurting, he thought she was doing so to avoid talking about what was on her phone. He later realized that the victim was injured and needed to go to the hospital so he and the victim woke their children up to get them ready. He admitted to hearing knocks but did not think they were at his door; Goldsby also testified that he initially did not hear shouting or any officers identifying themselves. He was not aware of phone calls he was receiving at that time because his phone was in another room. He got to his phone when his brother called him and after that was the first time he heard an officer say his name.

{¶ 12} At the close of his case, Goldsby renewed his Crim.R. 29 motion for judgment of acquittal, which the trial court again denied. After its deliberations, the trial court found Goldsby guilty of Count 1, felonious assault; Count 3, strangulation; Count 4, abduction; under Count 5, misdemeanor inducing panic (the lesser included offense of felony inducing panic); and Count 6, domestic violence. The trial court found Goldsby not guilty of Count 2, strangulation.

{¶ 13} The trial court proceeded immediately to sentencing. The court sentenced Goldsby on all counts (no merger), ordered him to serve probation for two years, and advised him that he would only serve his sentence if he violated probation. Over the defense's objection, the trial court ordered Goldsby to pay restitution in the amount of $1,173.91 to the City of Parma for officer overtime pay. Goldsby appeals, raising the following six assignments of error for our review:

I. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the State failed to present sufficient evidence to establish the elements necessary to support the convictions beyond a reasonable doubt.

II. Appellant's convictions are against the manifest weight of the evidence.

III. The trial court erred by failing to merge allied offenses of similar import which resulted in plain error.

IV. Appellant was deprived of his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Art. I, §10 of the Ohio Constitution.

V. The court erred by allowing the State to call [the victim] as a court's witness pursuant to Evid.R. 614 and to impeach its own witness with prior statements.

VI. The court erred by ordering appellant to pay restitution without evidence in support of the amount and without allowing appellant the opportunity to challenge in open court.

**Law and Analysis**

{¶ 14} In his first assignment of error, Goldsby contends that the State failed to present sufficient evidence to support his convictions.

{¶ 15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). An appellate court's function when reviewing sufficiency is to determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 16} With a sufficiency inquiry, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Thompkins* at 386.

{¶ 17} The crux of Goldsby's sufficiency challenge is that because the victim recanted her original version of events, the State's evidence presented at trial was insufficient. We disagree.

{¶ 18} Initially, we note that in alleged crimes in intimate relationships, "it is not uncommon for the complaining witness to change her [or his] story, 'forget' details, or recant for any one of a variety of reasons including threats of reprisal or genuine reconciliation. . . ." *State v. Bell*, 2015-Ohio-3817, ¶ 50 (3d Dist.), quoting *State v. Smith*, 2003-Ohio-5461, ¶ 11 (3d Dist.).

{¶ 19} The felonious assault conviction under R.C. 2903.11(A)(2) required the State to prove that Goldsby knowingly caused serious physical harm to the victim. In addition to the victim's text messages that she needed "help" because Goldsby had "hit [her] in [her] face," and she was "seeing blurry," the evidence at trial also included the victim's medical records and photographs of her, both demonstrating the injuries she sustained. The photographs and medical records constituted independent proof of the felonious-assault conviction. We are not persuaded by Goldsby's contention that the evidence was insufficient to demonstrate serious physical harm, as required for the felonious-assault conviction because the victim "denied breaking her nose or feeling any pain in that location." Regardless of the victim's account, the medical records demonstrated that she had a broken bone in her nose. "[A] broken nose is sufficient to constitute serious physical harm." *State v. Noah*, 2022-Ohio-1315, ¶ 10 (8th Dist.), citing *State v. Daniels*, 14 Ohio App.3d 41 (1st Dist. 1984).

{¶ 20} The strangulation conviction required the State to prove that Goldsby knowingly caused or created a substantial risk of physical harm to the victim by means of strangulation or suffocation. *See* R.C. 2903.18(B)(3). In addition to the victim's statements to the police that Goldsby strangled or choked her, one of the officers observed petechia on her neck; petechia is a blood pattern that occurs from possible choking. Moreover, photographs of the victim's neck were taken. All of this evidence was sufficient to support the strangulation conviction.

{¶ 21} The evidence was also sufficient to support the abduction count, which required the State to prove that Goldsby had knowingly by force or threat, restrained the victim's liberty under circumstances that created a risk of physical harm to her or placed her in fear. *See* R.C. 2905.02(A)(2). In her text messages to 9-1-1, the victim told dispatch that Goldsby "doesn't let me leave" and after the police's arrival on the scene she texted "he doesn't let me answer the door," and "I want to leave [but] he doesn't let me leave." The victim also communicated to the 9-1-1 dispatch and to officers on the scene that Goldsby had hit and choked her. That evidence is not negated, as Goldsby insinuates, because Goldsby and the victim walked out of the apartment together and Goldsby was, according to the police, cooperative and compliant. They came out together after over two hours of the police attempting to communicate with him and get him out. It was only after the police contacted Goldsby's brother and the brother contacted Goldsby that he surrendered. The victim's text messages demonstrated that she wanted to leave, but Goldsby would not allow her. The evidence was sufficient to sustain the abduction conviction.

{¶ 22} Regarding inducing panic, the State had to prove that Goldsby caused the evacuation of any public place or otherwise caused serious public inconvenience or alarm by committing any offense with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm. *See* R.C. 2917.31(A)(3). According to the police, the initial text messages from the victim indicating that Goldsby would not allow her to leave warranted the engagement of a SWAT team. After Goldsby's lack of response, the decision was made to evacuate

the apartment complex. The victim's contention, made after the incident, that she did not know the police were at the apartment complex did not negate the impact of her initial text messages and the ensuing law enforcement response. The inducing-panic conviction was supported by sufficient evidence.

{¶ 23} For the domestic violence conviction, the State had to prove that Goldsby knowingly caused or attempted to cause physical harm to the victim, a household or family member. It is undisputed that Goldsby and the victim lived together with their two young children. As discussed, the victim texted 9-1-1, stating that Goldsby had hit her in her face, her vision was blurry, and Goldsby would not let her leave the apartment. Further, she later told the police that Goldsby had choked or strangled her. This evidence was sufficient to sustain the domestic-violence conviction.

{¶ 24} The State presented sufficient evidence to sustain all of the convictions. The first assignment of error is overruled.

{¶ 25} In his second assignment of error, Goldsby contends that his convictions were against the manifest weight of the evidence.

{¶ 26} When evaluating a claim that a verdict is against the manifest weight of the evidence, "we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168, citing *Thompkins*, 78 Ohio St.3d at

387. Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, (1st Dist. 1983).

{¶ 27} This is not the exceptional case in which the evidence weighs heavily against the convictions. Although the victim recanted her original version of events, the corroborating evidence provided credibility to her original version of events, which was credible evidence for all the convictions. Specifically, the victim texted 9-1-1 seeking help because Goldsby, with whom she lived, had hit her, her vision was blurry, and he would not allow her to leave the apartment. Law enforcement officials responded, and the victim continued to report that Goldsby would not allow her to answer the door or leave the apartment. In what ended up being an over two-hour incident with police on the scene, law enforcement evacuated the apartment complex for the residents' safety. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we do not find the trial court clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed.

{¶ 28} The second assignment of error is overruled.

{¶ 29} For his third assignment of error, Goldsby contends that the trial court committed plain error by not merging the felonious-assault, domestic-violence, and abduction convictions. Goldsby did not raise an allied offense issue or otherwise object to the sentences imposed by the trial court. Therefore, he has forfeited his

allied offenses claim, except to the extent that it constitutes plain error. *State v. Rogers*, 2015-Ohio-2459, ¶ 21-25, citing *State v. Quarterman*, 2014-Ohio-4034, ¶ 15-16. Applying the plain-error standard to an allied offenses argument, the "accused has the burden to demonstrate a reasonable probability that the convictions are allied offenses of similar import committed with the same conduct and without a separate animus" or import. *Rogers* at *id.* The defendant must meet this burden before a reviewing court may reverse for plain error. *Id.*

{¶ 30} Under Crim.R. 52(B), appellate courts have discretion to correct "[p]lain errors or defects affecting substantial rights notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *Rogers* at ¶ 22. To prevail under a plain-error analysis, the appellant bears the burden of demonstrating that the trial court "deviated from a legal rule," or that there was "an 'obvious' defect in the proceedings" that resulted in prejudice, i.e., the outcome of the proceedings would have been different. *Id.* at ¶ 17-22. The Ohio Supreme Court has admonished courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at ¶ 23.

{¶ 31} R.C. 2941.25, Ohio's merger statute, provides in relevant part as follows:

> A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his [or her] conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 32} "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors — the conduct, the animus, and the import." *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus. If any of the following are true, a defendant's convictions do not merge and he or she may be sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25.

{¶ 33} The domestic-violence statute provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). The felonious-assault statute prohibits someone from knowingly causing "serious physical harm to another." R.C. 2903.11(A)(1). And the abduction statute prohibits someone, "without privilege to do so," from knowingly by force or threat, restraining the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear. R.C. 2905.02(A)(2).

{¶ 34} There was no plain error in failing to merge the abduction with the felonious assault and domestic violence. The abduction extended beyond the

felonious-assault and domestic-violence incidents. The abduction continued after the assault, because it took over two hours for Goldsby to surrender to the police and was committed with a separate animus, that was, to place the victim in fear, while the felonious assault and domestic violence were committed to cause serious physical harm and physical harm, respectively. The serious physical harm was the broken nose and the physical harm was the eye injury. Thus, the abduction conviction would not have merged with the felonious-assault and domestic-violence convictions.

{¶ 35} Regarding the felonious-assault and domestic-violence convictions, as stated, the record demonstrates that the incident resulted in two distinct physical harms. The serious physical harm for the felonious assault was the broken nose and the physical harm for the domestic violence was the eye injury. Thus, the crimes were not allied offenses of similar import and there was no error in not merging them.

{¶ 36} There was no error, plain or otherwise, in the trial court's failure to merge Goldsby's conviction. The third assignment of error is overruled.

{¶ 37} In his fourth assignment of error, Goldsby contends that his trial counsel was ineffective for failing to raise merger at sentencing.

{¶ 38} To establish a claim of ineffective assistance of counsel, a defendant must show both his or her trial counsel's performance was deficient, in that it fell below an objective standard of care, and the deficient performance resulted in

prejudice. *State v. Bradley*, 42 Ohio St.3d 136, 141-143 (1989), citing *Strickland v. Washington*, 466 U.S. 668 (1984).

{¶ 39} Because we find the offenses were not subject to merger, the prejudice prong was not satisfied. Thus, we need not address the second prong, i.e., analyze whether counsel's performance fell below the standard of care or was deficient for failing to raise merger before sentencing.

{¶ 40} The fourth assignment of error is overruled.

{¶ 41} For his fifth assigned error, Goldsby contends that the trial court abused its discretion by allowing the State to call the victim as a court witness under Evid.R. 614(A).

{¶ 42} Evid.R. 614(A) provides, in relevant part that, "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." Pursuant to Evid.R. 611 and 614, a trial court has discretion to control the flow of the trial, including questioning of witnesses, "in a search for the truth." *State v. Redon*, 2009-Ohio-5966, ¶ 8 (8th Dist.). "Evid.R. 614(A) exists to bring about the proper determination of a case. A witness whose appearance is important to the proper determination of the case, but who appears to be favorable to the other party, is a principal candidate for application of Evid.R. 614(A)." *State v. Curry*, 2007-Ohio-5721, ¶ 18 (8th Dist.).

{¶ 43} Further, Evid.R. 611(A), governing the trial court's control over the mode and order of interrogation of witnesses, provides in relevant part, that "[t]he court shall exercise reasonable control over the mode and order of interrogating

witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth . . . ."

{¶ 44} The trial court's decision to treat a witness as a court's witness, rather than a State's witness, is entirely within the trial court's discretion, and this court will not reverse the trial court's decision absent an abuse of that discretion. *Parma Hts. v. Owca*, 2017-Ohio-179, ¶ 35 (8th Dist.), citing *State v. Stadmire*, 2003-Ohio-873, ¶ 26 (8th Dist.); *State v. Davis*, 79 Ohio App.3d 450, 454 (4th Dist. 1992). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "The court's power to call a witness pursuant to Evid.R. 614(A) is inherent, and should be exercised in fulfillment of the court's fundamental obligation to assist in arriving at the truth." *State v. Brown*, 2015-Ohio-950, ¶ 15 (11th Dist.), citing *State v. Davis*, 1993 Ohio App. LEXIS 5917 (11th Dist. Dec. 10, 1993), citing Evid.R. 614(A), Staff Notes.

{¶ 45} The trial court here did not abuse its discretion in allowing the State to call the victim as the court's witness. The trial court initially ruled that it would hold the State's motion in abeyance to see how the victim's testimony unfolded. Once it was clear that her testimony contradicted her prior recitation of the incident, the court granted the State's motion.

{¶ 46} We are not persuaded by Goldsby's contention that the court abused its discretion in granting the motion because there was no element of surprise on the part of the State. This court has held that when a trial court calls a witness, it

does so regardless of the surprise element stated in Evid.R. 607(A).[1] *State v. Crawford*, 2013-Ohio-1659, ¶ 54 (8th Dist.), citing *State v. Arnold*, 2010-Ohio-5379, ¶ 43 (2d Dist.), and *State v. Apanovitch*, 33 Ohio St.3d 19 (1987).

{¶ 47} The trial court did not abuse its discretion by allowing the State to question the victim as a court witness. The fifth assignment of error is overruled.

{¶ 48} In his sixth assignment of error, Goldsby challenges the trial court's $1,173.91 restitution order.

{¶ 49} This court reviews an order of restitution under the abuse-of-discretion standard. *State v. Lalain*, 2011-Ohio-4813, ¶ 9 (8th Dist.), citing *State v. Marbury*, 104 Ohio App.3d 179 (8th Dist. 1995). Again, an abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson*, 2021-Ohio-3304, at ¶ 35.

{¶ 50} Goldsby contends that the trial court improperly ordered restitution to the Parma police department without evidence in support of the amount and without allowing him the opportunity to challenge the amount. We believe there is a different reason to reverse; that being, that the award to the police department was improper because it was not a victim.[2] At least one appellate district has held that a

---

[1] Evid.R. 607(A) provides in relevant part that "[t]he credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."

[2] An appellate court is not obligated to address issues not explicitly raised by the parties, but it maintains the discretion to do so. *C. Miller Chevrolet, Inc. v. Willoughby Hills*, 38 Ohio St.2d 298, 301 (1974). The Supreme Court of Ohio has further held that

de novo standard of review is used when determining to whom restitution may properly be awarded. *Centerville v. Knab*, 2019-Ohio-1903, ¶ 25 (2d Dist.), citing *State v. Clay*, 2016-Ohio-424, ¶ 5 (2d Dist.).

{¶ 51} In *Knab*, the defendant called the police and falsely reported that there was an active shooter at his residence and that someone had been shot. After a bench trial, the defendant was found guilty of making a false report to a law enforcement agency and improper use of a 9-1-1 system. In sentencing the defendant, the trial court ordered restitution to the police department for the officers' time in responding to the call.

{¶ 52} On appeal, the Second District Court of Appeals reversed the restitution order, finding, in part, that the police department was not a victim. The appellate court rejected the State's argument that Marsy's Law expanded the definition of victim to include law enforcement agencies. The Supreme Court of Ohio accepted the case for review "to determine whether a municipal corporation is a 'victim' as that word is used in Article I, Section 10(a) of the Ohio Constitution, a provision known as Marsy's Law." *Centerville v. Knab*, 2020-Ohio-5219, ¶ 1. The Court held that it is not. *Id.* at ¶ 31.

{¶ 53} We recognize that the Supreme Court's holding addressed the issue of restitution to law enforcement agencies solely under Marsy's Law. *Id.* But our review of the framework of the restitution statute still leads us to the conclusion that

when an issue of law that was not argued is implicit in an issue that is properly argued on appeal, a reviewing court may consider and resolve that implicit issue. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279 (1993).

a police department is not entitled to restitution for responding to crimes, even in a situation such as here, where it is alleged that police officers had to work overtime in response.

{¶ 54} R.C. 2929.18(A)(1) authorizes a trial court to impose restitution as part of a felony sentence "in an amount based on the *victim's* economic loss." (Emphasis added.) R.C. 2929.01(L) defines "economic loss" as "economic detriment suffered by a *victim* as a direct and proximate result of the commission of an offense. . . ." (Emphasis added.) As this court has stated, "[A]n order of restitution is improper when the defendant was neither charged nor convicted of any crime relates to alleged economic loss." *State v. Beckwith*, 2022-Ohio-2362, ¶ 12 (8th Dist.), citing *State v. Maddox*, 2015-Ohio-2859 (8th Dist.); *see also Knob* at ¶ 20.

{¶ 55} In *Beckwith*, for example, the defendant was released on bond after he was charged and required to wear an ankle monitor. The defendant removed the ankle monitor and fled the jurisdiction to Georgia. He was later arrested, extradited from Georgia to Ohio, and pleaded guilty to menacing by stalking. In sentencing him, the trial court imposed a restitution award to the sheriff's department for the damage to the ankle monitor and to the prosecutor's office for the extradition costs. This court reversed the restitution order, finding that, generally government agencies are not victims entitled to restitution and the defendant was not charged with vandalism or criminal damaging relative to the ankle monitor and extradition fees cannot be recovered as restitution. *Beckwith* at ¶ 16, 30.

{¶ 56} Likewise here, Goldsby was not charged with any crimes related to the police or the City of Parma and therefore the restitution order was improper. The sixth assignment of error is sustained.

{¶ 57} Judgment is affirmed in part; reversed in part. The conviction and sentence are affirmed; the restitution order is reversed. Case remanded for vacation of the restitution order.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR